BRADY, Justice:
This is an appeal from the Circuit Court of Washington County, Mississippi, wherein the appellant was found guilty of murder and was sentenced to serve a term of life in the Mississippi State Penitentiary. From that verdict and sentence this appeal is taken.
On July 16, 1969, between 5:00 and 5:30 p. m., while playing in front of her family’s store-home with several of her friends, Flora Jean Smith, a Negro girl, large for her age, was offered a job of babysitting by a white male who drove up and stopped in front of the store. Flora Jean Smith did not return and her body was discovered three days later floating in Lake Ferguson near Greenville, Mississippi. Subsequent to death, a broomstick had been thrust seventeen and one-half inches into her abdominal cavity through the vagina. The autopsy report stated that the probable cause of death was “asphyxia due to a crushing of the thorax with lung collapsed and an acute bullous emphysema, probably in conjunction with strangulation.” Psychiatric examination by the authorities at the Mississippi State Mental Hospital disclosed appellant is free from psychosis.
The record reveals that Flora Jean Smith, who was thirteen years old, with other children had been watching television on July 16 between 3:00 and 5:00 p. m. When “Cartoon Carnival” went off the air at 5:00 o’clock, they all went out to the yard to play.
Fred Robinson testified that he had been playing hide and seek with the other children but was standing and talking to Flora Jean when a car stopped, driven by a white man who called to her, “Hey, girl, do you want a babysitting job?” She asked when she could start to work and the man answered, “right now.” Fred Robinson further testified that Flora Jean then ran into the house, came out and got on the back seat of the car. Fred Robinson had a good view of the white man who was driving the car and he positively identified the appellant as the man who was driving the automobile.
Mrs. Azlean Smith, the mother, was working in her kitchen behind the store when Flora Jean came in the front portion of the store and said: “Mama, I got a babysitting job.” After Flora Jean went back out, her mother came to the front of the store and looked out the window and saw the car driving off. She could not see who was driving the car but she said that she did not “feel right about the car” and she noted and wrote down the tag number, 76 B 2273. It was shown that the license tag had been issued for a car registered in the name of Mrs. Helen Taylor, appellant’s wife.
Robert Frierson, who lived directly across the street from the Smith store-home, testified that he was in his yard on the afternoon of July 16 and that he observed the car that stopped at the store. He noticed that the driver was a white man who talked to the children and that Flora Jean ran into the house and came out. She again went into the house, then came out and got into the car and sat on the right side of the back seat. He noticed that there was primer paint on the left front door of the car as he saw the car drive away.
Mr. L. B. Sheilds, a neighbor, testified that he had lived next door to the appellant for approximately eight years. He further testified that on the afternoon of July 16, as was customary, he had picked up his daughter, Willa Jane, who worked at Sears, Roebuck store, to bring her back to their home. He had to stop his car in order to allow traffic to go by before he could enter the street. It was at this time that he observed the appellant driving by in his wife’s, Mrs. Taylor’s, car. He also saw that there was a black person who ap *730 peared to be a “pretty good sized person” sitting on the back, right side of the automobile. He placed the time at just a few minutes after 5:30 in the afternoon.
Miss Willa Jane Sheilds testified that she recognized the automobile as the one belonging to the Taylors. She stated that on the afternoon of July 16 her father had picked her up when she had gotten off from work at exactly 5 :30. She said that they drove through the parking lot and stopped facing the street named Broadway. She further testified that she was looking at a book or in her purse when her father made a comment and that she looked toward the street and saw a car pass that looked familiar. She saw two people in the car, one a white man who was driving, and the other a “colored lady” on the right side of the back seat. The car was moving from her left to her right and when she looked, the car was just opposite the right corner of their automobile, a distance away of approximately ten feet.
Jack Taylor, a police officer, testified that he received a call from headquarters of the Greenville City Police Department to go to the home at 401 Nelson Street, which was the Smith store-residence, to obtain additional information on a missing child. It was after 5:00 p. m. on July 17 when he received this message. Upon his arrival at the Smith residence, he obtained the tag number of the automobile in which Flora Jean Smith had ridden away. He radioed from his patrol car back to headquarters requesting that a registration check be made on the tag number.
Albert Tackett, deputy sheriff, testified that on July 17 he received a telephone call from the police department asking him to check the tag number. The number was 76B 2273 and he went out to 1024 Thornton, where the Taylor home is located.. He spoke to Mrs. Taylor and to Mr. Taylor. He testified that he knocked on the door before he checked the tag number and Mrs. Taylor came out with him while he checked. The tag number was the identical number which had been given to him by the police department.
Captain Thomas Nance of the Greenville Police Department testified that on July 17 at approximately 9:00 o’clock p. m., he and Emmett Sweeden, a detective with the Greenville Police Department, and Officer Albert Tackett, Deputy Sheriff of Washington County, and Lieutenant Skinner, in two separate vehicles, went to the home of Mr. and Mrs. Taylor and placed Mr. Taylor under arrest. Captain Nance in detail informed Mr. Taylor of his constitutional rights. He stated that they carried Mr.. Taylor directly to the police station where he was booked at the sergeant’s counter at 9:32 p. m.
An extensive search was begun for Flora Jean Smith, and on July 19 her body was found floating in Lake Ferguson, south of Greenville, by two fishermen, Edward Patton and Ezekiel Taylor.
The appellant assigns two errors, which are:
(1) The verdict of the jury was contrary to the overwhelming weight of the evidence.
(2) The evidence is insufficient to sustain the conviction of the appellant.
Appellant asserts that he is innocent and that the state’s case against him is a fabrication in its entirety. Appellant points out that Mrs. Smith copied the license number of the car first from memory and then wrote it on another sheet of paper and, subsequent to these three separate and distinct acts, erased the letter C and wrote the letter B. Appellant submits that it was from this license number, supplied by the mother of the deceased, that the police were first turned in the direction of the appellant in their search for the missing child. Appellant also asserts that Mrs. Smith testified that she had given the license number at 8:00 o’clock a. m. on Thursday morning, July 17, to the police department while Officer Jack Taylor, who was called by the appellant’s attorney, testified that he re *731 ceived the license tag- number from Mrs. Smith after 5:00 o’clock p. m. on Thursday, July 17. The record reveals that after the receipt of this license number, the police investigation proceeded rather rapidly, climaxing in the arrest of the appellant approximately four hours after the receipt of the license tag number. Appellant contends that the discrepancy in the testimony of Mrs. Smith as to when she first gave the license tag number to the police and the testimony of Officer Jack Taylor as to when he received the license tag number should tend to cast grave doubt upon the veracity of Mrs. Smith’s testimony. Appellant further urges that there is a serious conflict of testimony relating to the series of events at the time the mother, Azlean Smith, had noted the license number. This serious conflict was that Robert Frierson had testified that Mrs. Smith came to the door of the store and peeped around the corner as the car in which the decedent departed was leaving, while Mrs. Smith testified that she did not come to or out of the door but noticed the license number from inside the window of the store. Appellant, in addition to the above, calls the Court’s attention to the obvious erasing of the letter and urges that his defense exhibit number one, which consisted of the tag number written by Mrs. Azlean Smith in court upon a piece of paper, shows that there is an obvious difference in the way the figure 2 was written on the original piece of paper by Mrs. Azlean Smith and on the second piece of paper on which appellant’s counsel had Mrs. Smith rewrite the number.
Appellant asserts that this use of the license tag number was the initial error and that the Chief of the Greenville Police Department and his Chief of Detectives, Tom Nance, then compounded the error beyond repair and any hope of the appellant’s ever receiving a fair trial, when they took a single "“mug shot” of the appellant, complete with number and date of arrest on the photograph, to the residence of the deceased. This photograph was exhibited to the young children and they were asked if this was the man who took their sister or friend away the previous afternoon. Appellant contends that these actions by the police department were “im-permissibily suggestive” and by such actions the police department violated the appellant’s constitutional rights. Therefore, the conviction should be set aside. Appellant relies upon the authority of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and Williamson v. State of Mississippi, 248 So.2d 634 (Miss. 1971). This assertion of the appellant is without merit for the reason appellant’s motion to exclude all testimony as to identification was sustained and no one who saw the photograph was permitted by the trial court to identify the appellant in the presence of the jury, as the person who drove the car in which the deceased had been carried away. The record clearly reveals that the jury did not hear any identification testimony by any witness who saw the photograph. Therefore, the appellant’s reliance on Simmons v. United States, supra, to overthrow his conviction is without merit.
The appellant stresses that it is most important, and urges that the Court note, that immediately subsequent to his arrest on the night of July 17, 1969, the Greenville Police Department was given permission by the appellant’s wife to thoroughly search, examine and investigate the automobile reportedly used by the appellant to abduct the deceased. Appellant urges that besides the physical evidence of material objects such as crowbars, a knife, hammer, and some finger prints, sweepings were vacuumed from the car. These items were then sent to the FBI laboratories in Washington, D. C., together with clothing, some of which belonged to the deceased and some of which had been taken from the appellant’s dirty linen closet and other places in his home with permission obtained from the appellant’s wife. There is no merit in this contention of the appellant because Francis D. Silas, Jr., *732 Special Agent with the Federal Bureau of Investigation, testified as a witness for the appellant that none of the items could in any way establish a connection between the appellant and the deceased girl.
The appellant relied on an alibi witness, Mrs. Jewel Donald. She testified that the appellant arrived at Edith’s Grill where she worked between the hours of 3:00 and 4:00 p. m. on July 16 and that he departed therefrom after 5:15 p. m. She was aware of the time because her “boy friend” arrived at the grill at about 5 :15 p. m. She stated that the appellant departed after her “boy friend” had arrived. Mrs. Donald was not related in any manner to the appellant nor had she ever seen him on any occasion prior to the day in question. The grill in which Mrs. Donald worked is located approximately a mile from the location in which the Smith child had been picked up.
The appellant took the stand in his own defense and testified that on the day in question he was drinking beer in various lounges or cafes on Washington Avenue, the last of which was Edith’s Grill located in the Washington Hotel, where Mrs. Donald was working. He testified that he left the grill between 5:30 and 6:00 p. m. and proceeded to Gibson’s store in search of a trim paint brush. He claimed that after leaving Gibson’s he traveled to various places and finally drove to the city of Leland, which is located approximately ten miles east of Greenville. The purpose for going to Leland was to look for new construction work in which he might obtain paint jobs. He testified that on his way back home he had automobile trouble; something went wrong with the water pump and that some man, in what appeared to be a Pontiac automobile, stopped and loaned him a screwdriver. As a result, he did not arrive home until 8:30 to 9:00 p. m. on the night of July 16. Appellant submits that his version of what occurred was reasonable and true and, relying on Westbrook v. State, 202 Miss. 426, 32 So.2d 251 (1947), appellant submits that his version of what occurred should be controlling until contradicted. However, the appellant, after leaving Edith’s Grill, could not name a single person he saw or talked to, including the man who gave him the screwdriver, until he finally went home.
The appellee avers that the automobile was identified by witnesses and it became evidence of the crime. Thus a search of the automobile after appellant’s arrest was proper as it was an instrument or an implement by which the crime was committed. In addition, it is only when a defendant has been materially prejudiced, or deprived of some substantial right that cases should be reversed for wrongful admission of testimony. Ivey v. State, 206 Miss. 734, 40 So.2d 609 (1949).
The state submits that Mrs. Jewel Donald testified that although her boy friend got off at 4:00 o’clock and could have gotten there at 4:30, he did not do so. However, Officer Sweeden testified that he had interviewed Mrs. Donald on July 17 and that she told him on that occasion that the appellant had come into Edith’s Grill at approximately 2:00 o’clock and stayed for approximately two hours. There is no witness who testified to seeing the appellant after he left Edith’s Grill with the exception of Fred Robinson, who identified the appellant as the individual driving the car that picked up Flora Jean Smith, and Mr. Sheilds, who testified that he had observed the appellant a few minutes past 5:30 when he drove down Broadway in front of Mr. Sheilds’ stopped automobile.
In Westbrook v. State, supra, the testimony was that of the defendant. There was no other eye witness. In that case the testimony did not contradict the other evidence. In the case at bar the appellant was not an eye witness and denies even being in the vicinity. Therefore, the circumstances and facts are distinctly different from those in the Westbrook case and distinguish the case at bar from the Westbrook case. The jury was properly instructed that they must return a verdict *733 of not guilty if the state failed to prove guilt of the appellant beyond a reasonable doubt to a moral certainty and to the exclusion of every reasonable hypothesis than that of guilt of the accused. No complaint is made regarding the instructions. There was sufficient evidence to justify the submission of the issue of the appellant’s guilt to the jury. Conceding that the evidence is for the most part circumstantial, we cannot say that the verdict of the jury was based upon evidence insufficient to sustain the conviction of the appellant.
The issues were submitted to the jury with proper instructions. The jury was the sole judge of the credibility of the witnesses and the truth of their testimony. We cannot say that the verdict is against the overwhelming weight of the evidence.
For the foregoing reasons the judgment of the circuit court is affirmed.
Affirmed.
GILLESPIE, C. J., and JONES, SMITH and SUGG, JJ., concur.