PATTERSON, Chief Justice,
for the Court:
Jimmy Ray Smith was convicted of the forcible rape of a twelve year old girl and sentenced to a term of thirty five years in the Mississippi State Department of Corrections. Prom the verdict and sentence of the Circuit Court of the First Judicial District of Hinds County, Smith appeals, assigning three errors.
1. Where, in a prosecution for rape, the testimony of the complaining witness is self-contradictory, or contradicted by prior inconsistent statements, or rebutted by other testimony, the trial court erred in not granting a new trial.
2. Where the defense requested an instruction that, “the term ‘beyond a reasonable doubt’ is synonymous with the term ‘to a moral certainty’ ...” and no other instruction contained the term “to a moral certainty”, the court erred in refusing said instruction.
3.Where the prosecution failed to provide copies of a prior statement of the prosecutrix, requested by the defense and ordered by the court, the court erred in permitting the prosecution witness to bolster the testimony of the prosecutrix.
The prosecutrix testified that while sleeping between her niece and nephew whom she was babysitting, she was awakened by a man, later identified as Smith, who forced her to go with him in a brown Pinto automobile to his trailer where he raped her twice. That the prosecutrix had sexual intercourse or had been raped was supported by a physician’s testimony who examined her the following day.
The morning following the alleged rape, Smith dressed and fled the trailer, leaving the prosecutrix. She then went to Smith’s parents’ trailer (the Smiths were long-time friends of prosecutrix’s parents) clad in her nightgown and requested permission to use the telephone.
The girl’s parents had been searching for her during the night and had notified the police she was missing. After being notified of her whereabouts, Diane’s sister picked her up at the Smiths and she was taken to the hospital emergency room where she was examined by a physician.
The appellant related a different account of the night’s activities. According to Smith, the prosecutrix, who was at her sister’s house babysitting, called and requested him to bring some marijuana and beer over to her and her boyfriend. Then the prose-cutrix, her boyfriend and Smith went pleasure riding in his wrecker. The prosecutrix locked the door to the house and did not have a key when they returned from riding, so she went through the window to check on her niece and nephew. Afterwards the three of them went to Smith’s trailer to smoke marijuana and drink.
Smith stated that about 12:00 or 12:30 a. m., he went alone to his sister’s to borrow her blue Vega leaving the prosecutrix and her boyfriend at his trailer. He testified further that he fell asleep on the couch in *884 his trailer while the prosecutrix and her boyfriend were in bed. He denied having raped the complaining witness and maintained that she had been with her boyfriend the entirety of the night.
The next morning the victim’s father notified appellant’s parents that his daughter was missing; and they advised him that their son, the appellant, was not there. Thereafter the father went to his son’s trailer but received no response when he knocked on the door. Whereupon Mrs. Smith went to the trailer and awakened her son telling him that the victim’s parents were searching for their daughter. Shortly thereafter she and her husband observed the appellant driving away in his sister’s blue Vega automobile with somebody in the car with him.
After the appellant’s departure, the prosecuting witness left his trailer and came scantily clad to the Smiths’ residence. Mrs. Smith provided her with clothing and called her parents. Shortly thereafter members of the victim’s family and police officers arrived at which time the young girl related the facts of the incident to the officers, the most important of which was that she was forced to consent to the sexual demands of her assailant because she was threatened with a knife.
As mentioned Smith fled his trailer the morning following the alleged rape and was not seen again until he was arrested in Gulfport approximately nine days later. It is significant that he knew very little about the victim’s boyfriend and could only describe him as:
“He is_I don’t really know. He has got sort of dark hair and just a young boy.”
This brings us to the first assignment of error that a new trial should be granted because the complaining witness’ testimony was self-contradictory, contradicted by prior inconsistent statements and rebutted by other testimony. We are of the opinion that this contention lacks merit because the prosecutrix’ testimony was substantially corroborated; and though inconsistent in some details, other facts make the prosecutrix’s testimony entirely believable.
She made a full complaint of the rape and did not unduly delay notifying the police. Her nervous and hysterical behavior following her victimization as well as the attending physician’s testimony concerning contusions, lacerations and presence of male sperm in her vaginal area corroborated her testimony. Moreover defendant immediately fled the City of Jackson the morning after the rape. Smith’s testimony concerning her boyfriend was vague and contradicted by other testimony. He described Johnny as dark haired while his mother described Johnny as a blonde boy.
The prosecutrix’ testimony that Smith came through the window and pushed a piano aside to break into her sister’s house was corroborated by the investigating officer’s testimony that he found the window open with the piano pushed aside. Also, she stated she was wearing a nightgown and underwear while Smith stated she was wearing a nightgown and blue jean shorts. The testimony of the physician and other witnesses substantially corroborate the fact that she was clad only in a nightgown and underwear, and these garments were introduced as evidence. No blue jean shorts were introduced.
While several inconsistent or self-contradictory statements were made by the prose-cutrix, a twelve year old girl, none went to the gist of the offense. Therefore, we are of the opinion the verdict should stand. Although the prosecutrix’ testimony should be scrutinized with judgment and care, “no reasonable suspicion should be indulged against the complaining witness,” Hogan v. State, 46 Miss. 274, 279 (1872).
Appellant asserts error in the court’s refusal of his requested jury instruction D-8 as follows:
The term “beyond a reasonable doubt” is synonymous with the term “to a moral certainty.” The two terms can be used interchangeably.
We have long held that “reasonable doubt defines itself and needs no definition by this Court.” Isaacks v. State, 337 So.2d 928, 930 *885 (Miss.1976). Also see Boutwell v. State, 165 Miss. 16, 143 So. 479 (1932). Therefore, we are of the opinion this instruction was properly refused.
Appellant’s third assignment of error concerns a police report containing statements of the prosecutrix made to Officer Ned Garner. Prior to trial, defense counsel, in his motion for discovery, requested that copies of all statements made by the complaining witness be provided immediately upon the conclusion of her testimony. This motion was renewed again at trial. Apparently, the trial court inadvertently failed to provide defense counsel with a copy of her statement made to Officer Garner when the complete file, containing a copy of Officer Jordan’s report, was supplied. It was only upon redirect examination of Officer Garner that the defense attorney discovered this officer had a written report of his interview with the victim the morning after the incident. The defense attorney thereupon moved for a mistrial for failure to provide proper discovery and moved to exclude any further testimony of Officer Garner. Although the Court overruled defense counsel’s motions, a recess was granted to allow defense time in which to examine the written report.
Appellant also complains because a leading and suggestive question was asked by the State regarding oral sex which was highly prejudicial and inflammatory, and additionally was hearsay which bolstered the complaining witness’ testimony.
The rule regarding the admissibility of a rape victim’s complaint and hearsay exceptions to a rape complaint are stated in Carr v. State, 208 So.2d 886, 888 (Miss.1968):
The rule on this subject in Mississippi and in most of the United States is that the testimony of the prosecutrix, or other witness, is admissible to corroborate her testimony to show that shortly after the commission of the alleged offense she made a complaint, and when, where and to whom it was made. This evidence is not admitted as proof that the crime was committed, but merely to rebut the inference of consent that might be drawn from her silence.
By the great weight of authority, evidence of the prosecutrix’s complaint must be confined to the bare fact that a complaint was made and the details or particulars of the complaint are not admissible as substantive testimony to bolster the testimony of the prosecutrix as to the guilt of the accused. Clark v. State, 124 Miss. 841, 87 So. 286 (1921); Frost v. State, 100 Miss. 796, 57 So. 221 (1912); Frost v. State, 94 Miss. 104, 47 So. 898 (1909); Jeffries v. State, 89 Miss. 643, 42 So. 801 (1907); Dickey v. State, 86 Miss. 525, 38 So. 776 (1905); Anderson v. State, 82 Miss. 784, 35 So. 202 (1903); Ashford v. State, 81 Miss. 414, 33 So. 174 (1903); 75 C.J.S. Rape § 53 (1952).
The rule has been modified in this state so as to permit the prosecutrix to “identify the time and place with that of the one charged.” Lauderdale v. State, 227 Miss. 113, 85 So.2d 822 (1956). This modification in the rule does not permit the officers to add opinion testimony to bolster the testimony of the prosecutrix.
We are of the opinion that the State complied with the rule on direct examination of Officer Garner. However, on cross-examination of Officer Garner, defense counsel probed into the particulars of the rape complaint as shown by the following colloquy:
Q. ... Who did you talk to next?
A. Next I talked to the victim.
Q. Okay. Did she tell you what happened?
A. Yes, sir.
Q. What did she say happened? (emphasis)
The witness responded:
A. She said that she was babysitting for her sister and around 12:00 o’clock that night, she was awakened by someone that had their hand over her mouth and he forced her outside the house into a brown Pinto and when they got in the Pinto, he didn’t say nothing to her and he took her to Dixon Road Trailer Park, Lot No. 7. When they got to the trailer park—
*886 She told you it was Lot No. 7? <©
Yes, she told me Lot No. 7. And when they got to the trailer park, she said they went inside and then he asked her to take her clothes off and she refused to and then he slapped her and she took her clothes off and he forced her on the floor and they had sexual intercourse. >
After recess and on redirect examination of Officer Garner by the State’s attorney the following question was asked:
Q. Did you do what is commonly known as make a police report or report for the file after you interviewed this victim?
A. Yes sir.
Q. You have told us to the best of your memory what she told you, [sic] I’m going to ask you if you would read this and then I have some questions after you read this.
The witness read the document and was asked:
Q. Is there information contained in that report that you had forgotten to tell when the defense attorney asked you what she told you that morning? Are there items contained in this report that you didn’t relate to the defense attorney just awhile ago when he asked you?
A. Yes sir.
Q. Are those items which are in there that you forgot to tell the defense attorney true and correct as to what she told you?
Outside the jury’s presence defense counsel then moved to exclude any further testimony and for a mistrial because the discovery motion had not been complied with and he had not had the opportunity to peruse the statement before cross-examination. It was then discovered the prosecuting attorney had complied with the discovery request but the written statement of Officer Garner was inadvertently left out of the discovery package handed to defense counsel by the trial judge. However, he was then handed a copy of the report and his motion for a mistrial was overruled but with the right to recall the complaining witness for further cross-examination.
The State’s attorney questioned Officer Garner further as shown by the following questions and answers:
Q. All right. Having reviewed those notes, do you now remember that in fact that is what she did tell you in addition to what you’ve already told us?
A. Well, in addition, it’s about the same.
Q. Okay. The very limited additional information contained in your report, in addition to what you have given to the defense attorney, do you remember today that in fact she told you that on the date you made your notes?
A. Yes, sir, she did tell me.
Q. Having now read those notes, is your past memory now refreshed and your present memory recollected as to what happened on that date — what she told you on that day?
A. Yes, sir.
Q. In addition to what you have told the defense attorney, what, if anything, did she tell you concerning what is commonly referred to as oral sex or his penis in her mouth?
At this point the defense interposed an objection because the question was hearsay and leading. The Court overruled the objection whereupon the witness answered, “well, she did state to me that they did have oral sex.”
Without the written report of Officer Garner, undoubtedly we could properly state that defense counsel, by introducing the hearsay testimony of the officer upon the particulars of the rape, thereby waived any hearsay objection on this point. However, appellant’s argument that he would not have asked the hearsay question if a discovery motion had been complied with removes the issue into the realm of surmise and to which we surely cannot respond. The facts are the hearsay questions were asked and the officer’s written report was *887 discovered, and thereafter the State’s attorney went further into the hearsay area by leading and suggestive questions. The fact that the hearsay testimony was first elicited by defense does not grant the prosecution license to propound leading and suggestive questions as was here done. However, when this impropriety with its resulting answer, albeit bolstering of testimony, is considered within the overall scope of the evidence revealed by the record, we simply cannot say this was error to the defendant’s prejudice which would require a new trial.
As mentioned we have considered the record in minute detail, including the sentence imposed upon the defendant, and are unable to state that the jury’s verdict was not supported by the overwhelming weight of the evidence. The verdict and sentence is accordingly affirmed.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.