571 So.2d 244 (1990)
Ernest Lee ALLMAN
v.
STATE of Mississippi.
No. 07-KA-58850.
Supreme Court of Mississippi.
November 21, 1990.
*245 William T. Bailey, Sr., Lucedale, for appellant.
Mike C. Moore, Atty. Gen., DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Appellant, Ernest Lee Allman was indicted by the George County Grand Jury at the October 1986 Term on a single indictment containing three counts of raping his niece, C.A., who was 10 years old in 1986, the year of the alleged incidents. After a jury trial on January 30, 1987, appellant was found guilty on two of the three counts named in the indictment of violating MISS. CODE ANN. § 97-3-65(1) (1972).
On February 19, 1987, the court sentenced appellant as follows:
[T]he court sentences you to serve a period of life in prison on each count to the indictment for which you have been found guilty. That's counts 1 and 2 of the indictment. And the two sentences are to run concurrent.
Following the usual post-trial motions for J.N.O.V., or for a new trial, both of which were denied, appellant filed this appeal in October 1987, assigning twelve (12) errors, none of which we find meritorious. Each of the twelve issues are set forth and discussed hereafter in the body of this opinion.

Statement of the Facts
Due to the sensitive nature of this case, the names of the children involved are designated with initials.
C.A., ten years old at the time of the incident and 11 years of age at trial, testified that she was raped by appellant. The first occasion (Count 1) occurred in the late part of January or the early part of February 1986, during the afternoon hours, in a shed behind C.A.'s grandmother's house. C.A. was assisting appellant in cleaning out a refrigerator located in the shed. Also in the shed at the time was *246 C.A.'s four year old cousin, J.A.C.A. testified, "[h]e had sex with me."
Count 3 allegedly occurred in the summer of 1986, chronologically prior to Count 2. C.A. testified she was in her grandmother's trailer watching TV when appellant came in, sat beside her and "... started talking to me. I thought he was just being nice to me, talking to me ..." then "he started touching me ... [i]n my lower part of my body ... [h]e kept on talking to me and he asked me if I wanted to have sex with him. I said, no, leave me alone... . And he quit and he went back outside."
Count 2 occurred in September 1986. Alone in the trailer, C.A. was watching T.V. when appellant "came in. And he sat down beside me and he asked me what I was watching... . I told him... . And then he started touching me. And then he got my pants down, and then he started again."
Dr. Dayton Whites was called as a witness for the State. Defense counsel objected to the admission of Dr. Whites' testimony on the basis that Dr. Whites first entered the case on September 16, 1986, 7 days after the incident of September 9, 1986 (COUNT 2), and months after the other two incidents of February 1, 1986 (COUNT 1), and June 15, 1986 (COUNT 3). The Court overruled the objection. However, defense counsel was allowed, per his request, to voir dire Dr. Whites out of the presence of the jury and prior to Dr. Whites' testimony in the presence of the jury.
Dr. Whites testified before the jury that he performed a pelvic examination on C.A. in the Emergency Room of the local hospital on September 16, 1986. He had seen her before as a patient so, when she appeared at the hospital for medical attention on this day, he was called to examine her. The doctor asked C.A. some questions for purposes of medical diagnosis and treatment, one of which was had she ever had sexual intercourse and if so how many times. She answered she had and said at least ten times. In sum, Dr. Whites explained the process of a pelvic examination, that he performed one on C.A. using a virginal speculum but that in his opinion he could have used an adult speculum which is "very unusual" for a 10-year-old. In his opinion, his findings were consistent with the fact that C.A. had had intercourse on more than three occasions and that having intercourse with a male adult spread out over a period of time on at least ten occasions could cause the kind of dilation and enlargement he found C.A.'s vagina to have experienced. On cross-examination, the doctor opined that what happened to C.A.'s vagina happened at the very least, within the last few weeks prior to the examination. Other than that, he could not determine how far back in time the process had begun.
Testifying in his own defense, appellant denied ever penetrating C.A. on any occasion. With regard to the incident of February 1986, in the shed, he claimed it was C.A. who initiated a sexual pass at him, that "she pulled her britches down and [he] pulled [his] down" and that he lay down on top of her but then changed his mind and stopped all attempts to penetrate her. With regard to the incident during the summer 1986, appellant denied ever touching C.A. Finally, referring to the incident in the fall 1986, appellant claimed he was lying in bed watching T.V. when C.A. came into the room and made some sexual advances at him but he sent her away. He denies any touching took place much less penetration.

ASSIGNMENTS OF ERROR

# 1

Whether the trial court erred in denying appellant's motion for new trial on basis that role of preacher in court proceedings created prejudicial environment?
The facts of this first assignment of error are murky at best. The story that appellant would like for this Court to believe is that Rev. Roy T. Myers, Pastor of Rocky Creek Baptist Church, George County, Mississippi, acted as foreman of the Grand Jury that indicted appellant. This *247 much is true and can be substantiated in the record. However, the rest of the story is not nearly so easily proven. Appellant claims that the same Rev. Myers, "... at the beginning of this trial on Friday, 30 January 1987, ... was called forward and asked to lead in prayer." At the time of this trial, the prosecutrix was living at the Sheriff's Girls Ranch in the Rocky Creek Community, and had attended church and Sunday School at Rocky Creek Baptist Church where, as previously stated, Rev. Myers was the Pastor. Appellant asserts that after concluding the prayer in court, Rev. Myers, took a seat in the courtroom, across the aisle from the jury panel, by the superintendent of the Sheriff's Girls Ranch, Mr. Turner, for the selection of the petit jury to hear the case and, according to appellant, "[t]here being very few people in the courtroom."
Appellant asserts that the environment in the courtroom of this small community created a condition of prejustice [sic] against appellant "from the prayer at the beginning of the trial to the verdict of the jury." Therefore, appellant did not receive a fair and impartial trial.
The State's response is on target. At the hearing on the Motion for a New Trial, appellant put on no proof to substantiate any of the allegations in his motion, allegations repeated in his brief. In the absence of proof in support of the motion, the presumption in favor of the trial court's actions must prevail. Gordon v. State, 349 So.2d 554, 555 (Miss. 1977). Moreover, appellant failed to object at the appropriate time if he felt so prejudiced. The first the trial court heard of this matter was at the JNOV or New Trial hearing following the trial.
Finally, as the trial judge noted, any connection, in the minds of the jurors, between Reverend Myers and the trial of appellant would be speculative at most. The mere possibility that the jurors may have been influenced by some extraneous matter is not enough to set aside a verdict. Irving v. State, 361 So.2d 1360, 1368 (Miss. 1978), cert. den. 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).
This Court finds that appellant failed to meet his burden of proof on the motion. The trial judge correctly labeled the effect appellant seeks as "speculation." Neither appellant nor the record reveals exactly what transpired, who was in the court room when the prayer was said or that any one or more jurors were indeed prejudiced by the preacher's prayer, his presence, his connection with the prosecutrix or the fact that he was foreman of the Grand Jury that indicted appellant. "An appellate court only acts on the basis of the contents of the record as made in the trial court and may not act upon statements of facts in briefs or arguments of counsel which are not reflected by the record." Gordon, supra, at 555.

# 2

Whether the trial court erred in denying the motion to quash the indictment because the surplus language added to the indictment did not comport with the appropriate statutory language and therefore prejudiced appellant?
MISS. CODE ANN. § 97-3-65(1) (1972) under which appellant was indicted states in pertinent part as follows:
Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a child under the age of fourteen (14) years, upon conviction, shall be sentenced to death or imprisonment for life in the State Penitentiary; ... In all cases where the child is under the age of fourteen (14) years it shall not be necessary to prove penetration of the child's private parts where it is shown the private parts of the child have been lacerated or torn in the attempt to have carnal knowledge of the child.
Appellant discerns that the above statute states; "... rape by carnally and unlawfully knowing ..." whereas the indictment states: "... unlawfully, wilfully and feloniously rape, ravish and carnally know ..." (emphasis added) Appellant argues that the record is void of "wilfully, feloniously, ravish" and the use of the terms influenced the minds of the jury.
*248 Appellee emphasizes that the term unlawfully appears in both the indictment and the statute. The term feloniously means unlawfully with the intent to commit a felony-grade crime. Winston v. State, 127 Miss. 477, 484-85, 90 So. 177 (1921); Martin v. State, 163 Miss. 454, 457, 142 So. 15 (1932). Willfully simply means voluntarily. Blacks' Law Dictionary, p. 1848 (3rd Ed., 1933). Ravish means rape. Id., p. 1497. Appellee rightfully contends that appellant has not shown that the use of any of this surplus language prejudiced him in any way, Swanier v. State, 473 So.2d 180, 188 (Miss. 1985) (surplus language in jury instruction), and we agree with appellee that this assignment of error is without merit.

# 3

Whether the trial court erred in denying appellant's Motion to Dismiss the Indictment because the indictment had stacked counts?
MISS. CODE ANN. § 99-7-2 (1972) (Supp. 1989) is pertinent to this issue and reads in its entirety as follows:
(1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

(2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.
(3) When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.
(4) The jury or the court, in cases in which the jury is waived, shall return a separate verdict for each count of an indictment drawn under subsection (1) of this section.
(5) Nothing contained in this section shall be construed to prohibit the court from exercising its statutory authority to suspend either the imposition or execution of any sentence or sentences imposed hereunder, nor to prohibit the court from exercising its discretion to impose such sentences to run either concurrently with or consecutively to each other or any other sentence or sentences previously imposed upon the defendant.
Appellant claims he is unable to find court authority for or against his position but that "it appears to me (appellant) that the statute above does not authorize the stacking of three different occasions for the alleged commission of the same offense." He concludes that "[f]or this Court to permit the trial of all three charges in one trial of the severity of this case confounds the defense of the case, and sand bags the defendant."
Appellee responds by correctly asserting that the three counts of the indictment involved the same type of conduct by appellant, committed by him upon the same person, only at different times. MISS. CODE ANN. § 99-7-2(1)(a) and (b) (Supp. 1989) clearly allows what was done in the indictment in the case at bar, particularly being that these three transactions, very plainly, were connected by the identity of the victim and by the identity of the kind of act committed by appellant. Furthermore, all of the evidence proving each count was fully admissible to prove each of the other counts. Therefore, if the State had tried appellant at three separate trials, testimony as to the two other acts of rape by this appellant would have been admissible at each of the three trials. See, Mitchell v. State, 539 So.2d 1366, 1372 (Miss. 1989); White v. State, 520 So.2d 497, 500 (Miss. 1988); Woodruff v. State, 518 So.2d 669, 671 (Miss. 1988).
We agree with the state's analysis as it comports in particular with MISS. CODE ANN. § 99-7-2(1)(b) (Supp. 1989). This Court has recently discussed in great detail the pros and cons of single multi-count indictments allowed by MISS. CODE ANN. § 99-7-2 (Supp. 1989). McCarty v. State, 554 So.2d 909 (Miss. 1989). After a thorough study of each of the opinions this Court has written with regard to § 99-7-2 *249 (Supp. 1989), effective from and after July 1, 1986, we think the series of two rapes and one alleged attempt were properly joined under one indictment, since they were part of a common scheme or plan, pursuant to the language of MISS. CODE ANN. § 99-7-2(1)(b) (Supp. 1989). We hold this assignment of error to be meritless.

# 4

Whether the trial court erred by allowing Dr. Whites to testify for the State?
Although not clearly argued in his brief, appellant's argument is probably best expressed in his final sentence on the matter which reads:
[t]he testimony of Dr. Whites places the act on the father of the child, (said father did on a subsequent day in the Circuit Court of George County, Mississippi, ple[a]d guilty to the charge of rape on the person of C.A. [sic]). Simmons v. State, 61 So. 826 [Miss. 1913].
The record reveals C.A. was brought to the hospital on the day Dr. Whites examined her by Mrs. Shirley Roberts, a social worker with the Welfare Department, "because of the story that she alleged." On direct examination, immediately after establishing that C.A. had told Dr. Whites for purposes of medical diagnosis and treatment that she had had intercourse "at least ten times," the following exchange ensued:
Q. Okay. Did she tell you who this person was as part of the medical history?
A. My medical history relates that it was her father.

BY MR. BAILEY: May it please the Court, that would be hearsay. We are going to object to the names of any persons. He can tell what he saw. BY MR. HOLLIMAN:
Q. I will rephrase it. I will strike that. What kind of examination did you perform on C.A. [sic], Dr. Whites?
A. I checked her female organs. I did a pelvic examination.
As evidenced above, the question asked by the prosecutor as to who this person was who had had intercourse with C.A. was objected to by the defense and was withdrawn by the prosecutor. The question having been withdrawn and the defense not having requested any further action by the trial court, appellee contends there was nothing for the trial court to rule upon and, therefore, no ground for assignment of error. Furthermore, appellee argues that there is no basis for any showing that this question and Dr. Whites' answer could have resulted in any prejudice to appellant, since Dr. Whites did not testify that C.A. said anything to him at all concerning appellant.
Dr. Whites' testimony was helpful to the triers of fact in that he explained the following: how to perform a vaginal examination; what condition to expect a 10-year-old female's vaginal cavity to be; that C.A.'s vaginal cavity was not normal; that, while masturbation with a foreign object such as a coke bottle could cause the large vaginal opening he found in C.A.'s case, it was his opinion that this process would be almost too painful to initially perform; that he found C.A.'s vaginal cavity to be "one that had been entered many times," and that he could not say for certain it was appellant who had done so. Dr. Whites' testimony was relevant and admissible under Rules 401, et seq., M.R.E., in that it tended to make more probable the proposition that this ten-year-old girl had had sexual intercourse with an adult male on more than one occasion.
This assignment of error is meritless.

# 5

Whether the trial court erred in failing to grant Instruction D-1 (Peremptory Instruction)?
Appellant recites a great deal of C.A.'s trial testimony and argues that said testimony "surely gives rise to great doubt and the court should have granted a directive [sic] verdict, defendant Instruction No. 1 should have been given." Said instruction read as follows:
The Court instructs the Jury to find the Defendant, Ernest Lee Allman, not guilty.
Albeit a valiant attempt, in our opinion, appellant has taken a great deal of testimony *250 out of context, picking and choosing testimony that favors his position and wishes this Court to review only that testimony, ignoring the balance of C.A.'s testimony. Furthermore, he cites no case law with regard to the standard of review on the trial level and the appellate level relative to whether a peremptory instruction should be given.
Appellee responds by stating that C.A. described the events surrounding counts one (1) and two (2). Her testimony made a prima facie case as to each of these two counts of rape in the indictment. Christian v. State, 456 So.2d 729, 734 (Miss. 1984); Barker v. State, 463 So.2d 1080, 1082 (Miss. 1985) (uncorroborated testimony of rape victim is sufficient to sustain rape conviction). The State's proof showed that C.A. was under the age of fourteen, that appellant was over the age of eighteen, and that appellant, on each of these two occasions, did rape the child and penetrate her private parts. § 97-3-65(1), MISS. CODE (1972) (Supp. 1987). Appellee, therefore, contends the evidence met the test for legal sufficiency. Weeks v. State, 493 So.2d 1280, 1282 (Miss. 1986).
Appellee is correct in its analysis above. The evidence in the case at hand presented a guilt issue for the jury and the trial judge correctly overruled the peremptory instruction. Also, see state law with regards to ISSUE # 10, hereafter which law overlaps with Issue # 5.

# 6 and # 9

Whether the trial court erred in refusing Instruction D-4?
Appellant requested and was denied Instruction D-4 which read as follows:
The Court instructs the Jury for the defendant that you cannot convict the defendant upon the uncorroborated testimony of the prosecutrix and that if you are not convinced beyond every reasonable doubt and to a moral certainty from all the testimony that the defendant is guilty, then your verdict should be: "We the jury find the defendant not guilty."
Appellant asserts that the State used the testimony of Dr. Dayton Whites to corroborate the testimony of the prosecutrix and contends that "nowhere was there in evidence from the examination of Dr. Whites that sex was involved or that Ernest Allman was involved."
This court has stated,
The corroboration proof was sought in the testimony of the witness, Merrill and the physician Dr. Kreb. As to the lat[t]er the physical evidence adduced from personal examination of the prosecutrix was found to be equally consistent with innocence, especially in view of his testimony that her condition could innocently have occurred.
Yancey v. State, 202 Miss. 662, 32 So.2d 151 (1947).
Instruction D-4 is an incorrect statement of the law in that it instructed the jury that corroboration of the victim's testimony was necessary. Christian v. State, 456 So.2d 729, 734 (Miss. 1984); Barker v. State, 463 So.2d 1080, 1082 (Miss. 1985). Thus, the trial court cannot be put in error for refusing to give an instruction that misstates the law. We find appellant's argument meritless.

# 7

Whether the trial court erred in refusing Instruction D-7?
Appellant requested and was denied Instruction D-7 which read as follows:
The Court instructs the Jury that the State must prove, in this case, beyond a reasonable doubt, that the Defendant did unlawfully, wilfully feloniously rape, ravish and carnally know the female child and that it shall not be necessary for the State to prove penetration of the female's private parts where it is shown the private parts of the female have been lacerated or torn in the attempts to unlawfully, wilfully feloniously rape, ravish and carnally know her. The Court further instructs you, that should you find from the facts in this case that there was no penetration of the private parts of the child, or that the child's private parts were not lacerated or torn, then it shall be your sworn duty to find the defendant, not guilty.
*251 Appellant contends that the only evidence of penetration was from the prosecutrix, the medical witness could not say there was sexual intercourse, the alleged events having happened from seven days to nine months before the examination which, according to appellant's version of the facts, was for the purpose of determining if the prosecutrix was pregnant; therefore, it was error not to give Instruction D-7.
We find that the testimony of the victim established that there was penetration of her private parts on both of the occasions charged in Counts One and Two. This being so, rape was proven, and it was not necessary for the State to put on any proof at all of laceration or tearing of the child's private parts. § 97-3-65(1), MISS. CODE ANN. (1972) (Supp. 1987). We further hold that the jury was adequately instructed by Instructions S-2A and S-2B as to the elements of the crime, and D-7 would have been confusing and misleading. Presley v. State, 321 So.2d 309, 310 (Miss. 1975) (not error for the Court to refuse instructions that do not properly state the law demanded by the facts of the case or are misleading or confusing).
Instructions S-2A and S-2B read:
S-2A
The Court instructs the Jury that if you believe from all of the evidence presented in this case beyond a reasonable doubt that the Defendant, Ernest Lee Allman, a male person above the age of eighteen (18) years, did on or about the 1st day of February, 1986, in George County, Mississippi, unlawfully, wilfully and feloniously rape, ravish and carnally know one C.A. [sic], a female person under the age of fourteen (14) years, then in that event, it is your sworn duty to find the defendant guilty of Capital Rape, Count 1.

S-2B
The Court instructs the Jury that if you believe from all of the evidence presented in this case beyond a reasonable doubt that the Defendant, Ernest Lee Allman, a male person above the age of eighteen (18) years, did on or about the 9th day of September, 1986, in George County, Mississippi, unlawfully, wilfully and feloniously rape, ravish and carnally know one C.A. [sic], a female person under the age of fourteen (14) years, then in that event, it is your sworn duty to find the defendant guilty, of Capital Rape Count 2.

We hold this assignment of error to be without merit.

# 8

Whether the trial court erred in refusing Instruction D-2?
Appellant requested and was denied Instruction D-2 which read as follows:
The Court instructs the Jury that in order to warrant a conviction in this the case evidence on the part of the State, on the whole, must be such as to produce a moral certainty of guilt to the exclusion of every reasonable doubt of the guilt of defendant, and, unless the evidence has this effect, the jury must acquit.
Appellant cites the case of Taylor v. State, 254 So.2d 728 (Miss. 1971) (murder) in which this Court held that
[t]he jury was properly instructed that they must return a verdict of not guilty if the state failed to prove guilt of the appellant beyond a reasonable doubt to a moral certainty and to the exclusion of every reasonable hypothesis than that of guilt of the accused.
Id. at 732-33.
Appellant argues that the verbiage in D-2 was the same as this Court allowed in Taylor, supra and not to allow same in the case sub judice was reversible error.
Appellee contends that Instructions S-2A and 2B, supra, D-3 and D-5 properly instructed the jury that the Defendant's guilt must be proven beyond a reasonable doubt.
Instructions S-2A and 2B are repeated hereinbefore. Instructions D-3 and D-5 read:
D-3
The Court instructs the Jury for the defendant that the burden of proving the defendant guilty of every material element *252 of the crime which he is charged is upon the State of Mississippi. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.
D-5
The Court instructs the Jury that under the law no jury should nor has the right to convict the defendant upon mere suspicion, regardless of how strong that suspicion may be, nor simply because there may be a preponderance of evidence against the defendant, nor merely because there is or may be a reason to suspect that the defendant is guilty.
The Court now instructs you ladies and gentlemen of the Jury, that suspicion, no matter how strong or how great or how convincing, never rises to the dignity of evidence under the law, and before a jury on oath can lawfully convict, they must be convinced upon the evidence and the evidence alone that the defendant is guilty beyond a reasonable doubt.
Instruction D-2 was repetitive and, therefore, was properly refused by the court. Hunter v. State, 489 So.2d 1086, 1088-89 (Miss. 1986). The phrase "to a moral certainty" is confusing and misleading, since the State's burden is to prove the defendant's guilt "beyond a reasonable doubt". See, Smith v. State, 394 So.2d 882, 884-85 (Miss. 1981). (Reasonable doubt defines itself and needs no definition by this Court.) This assignment of error is without merit.

# 10

Whether the verdict of the jury was against the overwhelming weight of the evidence?
Appellant begins his argument by asserting that the prosecutrix told the court and jury that the crime was committed and then reversed her testimony on cross-examination. Appellant claims the prosecutrix was confused as to whether it happened in the shed, the house, the trailer, or in the barn. Furthermore, appellant claims that the minor was influenced in naming the defendant herein at the instance of Mrs. Roberts, Social Worker, Department of Public Welfare and Bill East, Criminal Investigator, District Attorney's Office, George, Greene and Jackson Counties. Finally, appellant cites to 13 different occasions in the record wherein the prosecutrix was asked to "slow down a little, speak up, ..." He then asks this Court to ponder the question: How could the jury hear the evidence and finally reach a just verdict when the testimony of the prosecutrix was not understandable?
Appellee's response asserts that C.A. testified as to the details of the rapes charged in Counts One and Two. She did not "reverse her testimony" as appellant asserts. The cross-examiner, perhaps because he was confused, asked questions that seemingly confused this eleven-year-old-child-witness, but she was able to tell her story despite the cross-examiner's efforts to trip her up. The testimony does not come close to supporting appellant's claim that C.A. was influenced by the welfare worker and/or the State's investigator; at any rate, appellant had full opportunity to test the truthfulness of all the State's witnesses on cross-examination.
Appellee concludes that the trial court was correct in refusing to disturb the verdict of the jury. Robinson v. State, 418 So.2d 749, 751 (Miss. 1982); Jones v. State, 358 So.2d 414, 416 (Miss. 1978).
The Law
Where a defendant has requested a peremptory instruction in a criminal case or after conviction moved for a judgment of acquittal notwithstanding the verdict, the trial judge must consider all of the evidence  not just the evidence which supports the State's case ... The evidence which supports the case of the State must be taken as true ... The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence ... If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, *253 granting the peremptory instruction or judgment n.o.v. is required. On the other hand, if there is substantial evidence opposed to the request or motion  that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded men in the exercise of impartial judgment might reach different conclusions  the request or motion should be denied. (Emphasis added)
Weeks v. State, 493 So.2d 1280, 1282 (Miss. 1986); Gavin v. State, 473 So.2d 952, 956 (Miss. 1985) (citations omitted).
We note that the testimony of C.A. diametrically conflicts with the testimony of appellant. In short, she says appellant made all the initial sexual advances toward her and that appellant penetrated her on at least two (2) occasions. On the other hand, appellant admits to the incident in the shed wherein he engaged in a failed attempt to have sex with C.A., but that it was C.A. who initiated any and all sexual advances toward him and he never succeeded in penetrating her on any occasion.
Nevertheless, this Court, in attempting to reach its decision on the case sub judice, must keep in mind certain law we recently re-stated in the case of Pinson v. State, 518 So.2d 1220 (Miss. 1988), as follows:
"The Jury is the sole judge of the credibility of the witnesses and the weight and worth of their testimony. They may believe or disbelieve, accept or reject the utterance of any witness. Smith v. State, 463 So.2d 1102 (Miss. 1985); Campbell v. State, 278 So.2d 420 (Miss. 1973." Campbell v. State, 480 So.2d 1161, 1162 (Miss. 1985).
It is not our function to determine whose testimony to believe. Thomas v. State, 495 So.2d 481 (Miss. 1986); Anderson v. State, 461 So.2d 716 (Miss. 1984); and Groseclose v. State, 440 So.2d 297 (Miss. 1983).
We will not disturb a jury's finding on conflicting testimony where there is substantial evidence to support the verdict. Billiot v. State, 454 So.2d 445 (Miss. 1984); Thomas v. State, 495 So.2d 481 (Miss. 1986). Furthermore, the evidence is considered by this Court in the light most favorable to the verdict. Fisher v. State, 481 So.2d 203 (Miss. 1985), and Inman v. State, 515 So.2d 1150 (Miss. 1987).
Id. at 1224.
The jury's verdict in this case is given great deference. The purpose of our justice system in allowing a minor to testify in a case such as the one at hand is to hear what she has to say and let the jury weigh her testimony, together with all the other witnesses. We hold the jury's verdict was not against the overwhelming weight of the evidence and this assignment of error is without merit.

# 11

Whether the trial court erred in denying the Motion to Dismiss the Indictment on the grounds that the Indictment used the language "Female Person" in lieu of "Child"?
The statute involved, MISS. CODE ANN. § 97-3-65(1) (1972) states in part, "... unlawfully knowing a child ... "whereas the indictment stated "... carnally know C.A. [sic], a female person ..."
The entirety of appellant's argument on this issue reads as follows:
I have made a study to support the position that by use of the term female in the indictment rather than child as set forth in the amended statute leads the writer to believe that a reason exists which gave rise to the amended statute.
I have made study of the law in cases such as Carley v. State, 382 So.2d 1090 [(Miss. 1980)] and am not able to find comfort in them.
Appellee points out that § 97-3-65, MISS. CODE ANN. (1972), was amended in 1974 to make punishable the rape of a male as well as a female. The statute now reads, in pertinent part, "a child under the age of fourteen"; the indictment used the language "a female person under the age of fourteen".
The indictment's language is wholly included within the statutory language, since a female person under the age of fourteen is a child under the age of fourteen. The *254 proof showed that C.A. was in fact a female person under the age of fourteen.
Appellant was not prejudiced in the preparation of his defense or exposed to double jeopardy by the indictment's language. Deaton v. State, 242 So.2d 452, 453 (Miss. 1970). The indictment need not use the precise words of the statute. Watson v. State, 483 So.2d 1326, 1328 (Miss. 1986).
We hold there is no merit to this assignment of error.

# 12

Whether appellant was prejudiced by fact that District Attorney did not have written process as to Plea Bargaining?
It is appellant's contention that
being a small county in the circuit with Jackson County, and as a defense attorney, though having been an elected prosecuting attorney, we have the need in the judicial system of some written direction as to plea bargaining... . It appears to me the issue of plea bargaining resolved based on which assistant District Attorney came for the term. It appears to me that plea bargains in this case violates the U.S. Constitution, Fifth Amendment, due process of law and XIV, equal protection of the law, and Mississippi Constitution Section 14.
Appellee's retort is short but to the point; Appellant cites no authority and makes no argument in support of this proposition. Kelly v. State, 463 So.2d 1070, 1072 (Miss. 1985). There is no constitutional right to plea bargain. Weatherford v. Bursey, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30, 43 (1977).
This assignment of error is meritless.

CONCLUSION
Having examined the briefs and record in this case with some care, we find no reversible error in the conviction on two counts of capital rape and sentences of life imprisonment; accordingly, we affirm the judgment of the Circuit Court of George County, Mississippi.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.