887 So.2d 840 (2004)
Derrell Antonio GREEN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00215-COA.
Court of Appeals of Mississippi.
September 21, 2004.
Rehearing Denied November 30, 2004.
*842 Patrick Joseph McNamara, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before BRIDGES and LEE, P.JJ., CHANDLER and GRIFFIS, JJ.
LEE, P.J., for the Court.
¶ 1. Derrell Antonio Green was convicted of murder under Mississippi Code Annotated Section 97-3-19 (Rev.2002), sexual battery under Mississippi Code Annotated Section 97-3-95(a) (Rev.2000), kidnaping under Mississippi Code Annotated Section 97-3-53 (Rev.2000), and rape under Mississippi Code Annotated Section 97-3-65(3)(a) (Rev.2000). It is from these convictions that Green now appeals. Finding his assignments of error to lack merit, this Court affirms the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
¶ 2. During the night of December 11, 2001, Cynthia Green was brutally beaten, stabbed and choked to death.[1] The only witnesses to the murder were Mandy, Cynthia's friend, and Brandy, Cynthia's seven-month-old baby.[2] Around 8 p.m. that night Mandy picked Cynthia up at the home of Valerie Green, Cynthia's sister. Mandy and Cynthia picked up Brandy, Cynthia's baby, and drove to Cynthia's house at 206 Meadow Lane. Cynthia had apparently decided to spend the night with her sister, so the trio entered the house so that Cynthia could pack some clothing. Mandy sat on the couch with Brandy, and Cynthia walked around the apartment. According to Mandy, Cynthia was near the front door when she screamed. Derrell Green had entered the apartment, grabbed Cynthia by the shoulders and shoved her towards the couch. During the altercation Green shoved Cynthia's head through a wall and pummeled her face, striking and choking her. Green repeatedly threatened Mandy's life as he assaulted Cynthia. At one point, Mandy attempted to escape, but Green chased her and caught her in the neighbor's yard, telling her that he had a gun and he would shoot her. After they returned to the house, Green forced Mandy *843 to perform oral sex on him and raped her. After the rape, Green instructed Mandy to clean herself, and he followed her into the bathroom. While they were in the bathroom, Brandy crawled into the bathroom with them, and Mandy grabbed the child, holding the baby close to her chest.
¶ 3. Green then turned his attention to Cynthia, who was lying on the floor. Green began caressing Cynthia, saying, "I loved you. I loved you." Mandy testified that she could hear Cynthia making noises, and she begged Green to get off of Cynthia and leave the house. When Mandy tried to check Cynthia's pulse, Green again threatened to kill Mandy. Green finally let Mandy check Cynthia's pulse, and Mandy told Green that Cynthia was still alive. Mandy begged Green to let her call the paramedics, and to that Green responded, "She just won't die." At that time, Green forced Mandy and Brandy into Mandy's car, and he drove around Vicksburg. Cynthia's cell phone, which was in the vehicle, rang a number of times, and Green instructed Mandy how to answer the telephone, first forcing her to pretend that she was Cynthia, then having Mandy inform the callers that Cynthia was at Wal-Mart. While they were driving, Mandy begged Green to let her call her mom and tell her she loved her. To this Green responded "Mandy, I'm not going to kill you. Shut the f*** up." Darrell made a series of telephone calls from the car, first calling his mother. Darrell returned to the house, and shortly thereafter another car pulled up. Darrell retrieved the telephones from the kitchen and the back of the house, and stuffed the phones in a bag along with Mandy's cell phone and Cynthia's cell phone. Green then told Mandy not to move until 12 o'clock. Then Green told her not to move off the couch until 11 o'clock, telling her, "I know where you stay at. I will f*** you up. I will kill you. I know where you stay at." After Green left, Mandy got off the couch and locked the door. She then checked on Cynthia. While she was checking on Cynthia, there was a knock at the door, and Mandy asked the person to identify himself. When she realized that the person at the door was Tiffany, Green's sister, Mandy opened the door and told Tiffany to stay with Cynthia while she ran next door to call for help. Mandy dialed 911 from a neighbor's house, then called Cynthia's mother and Cynthia's sister. Cynthia was pronounced dead at the scene.
¶ 4. Green was indicted by the Warren County grand jury for murder, sexual battery, kidnaping and rape. Green was appointed two attorneys to aid in his defense. The jury convicted Green on all counts, and Green received a sentence of life for Cynthia's murder, thirty years for the sexual battery, thirty years for the kidnaping, and forty years for the rape. It is from this conviction that Green has timely filed his appeal. On appeal, Green argues the following three assignments of error: (1) whether the trial court erred in allowing the State to make certain comments during its closing arguments; (2) whether the jury verdicts were against the weight of the evidence; and (3) whether the trial court erred in proceeding to trial despite the State's failure to complete DNA testing on a washcloth retrieved from the crime scene.
¶ 5. Finding no merit to these issues on appeal, this Court affirms the judgment of the trial court.

DISCUSSION OF ISSUES

I. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO MAKE CERTAIN COMMENTS DURING ITS CLOSING ARGUMENT?
*844 ¶ 6. As a general rule, prosecutors are to be given wide latitude in making their closing arguments. Wiley v. State, 691 So.2d 959, 965 (Miss.1997) (citing Jimpson v. State, 532 So.2d 985, 991 (Miss.1988); Johnson v. State, 477 So.2d 196, 209 (Miss.1985)); Shook v. State, 552 So.2d 841, 851 (Miss.1989). With that latitude in mind, the closing argument must be considered in context, considering the circumstances of the case. Id., citing Ballenger v. State, 667 So.2d 1242, 1270 (Miss.1995); Davis v. State, 660 So.2d 1228, 1248 (Miss.1995). Notwithstanding the wide latitude afforded attorneys in closing arguments, "[t]he standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Sheppard v. State, 777 So.2d 659(¶ 7) (Miss.2000).
¶ 7. Green argues that the prosecutor made improper comments which effectively switched the burden of proof from the State to the defendant. Specifically, the prosecutor said the following during his closing argument:
MR. BULLARD: The Defendant has spent an awful lot of time attacking the State's case in its closing arguments but did you notice that he didn't spend any time on trying to support his client's own story about what happened. He is not even trying to tell you that is what happened because it is not supported by anything. The defendant's story fits in with what I'm trying to tell you happened. here. He can not accept what has happened and he has created an allusion [sic], a story-book tale in his mind and they are not even trying to get you to believe it.
MR. MACNAMARA: Your honor, I would object that this is improper. He is reversing the burden of proof in this case.
BY THE COURT: Overruled.
¶ 8. Green argues that the prosecutor's comments were intended to mislead the jury to believe that Green was obligated to present proof of his innocence. Had the prosecution been arguing to the jury that Green had failed to present proof of his innocence, Green's assertion would be proper. However, reviewing the closing argument as a whole, this argument cannot be construed to have created such prejudice as to improperly effect the jury's verdict. In a case recently decided by this Court, we determined that although a remark may be improper, we will not reverse a conviction unless this Court is convinced that the remark contributed to the verdict. King v. State, 788 So.2d 93(¶ 16) (Miss.Ct.App.2001). We are not so convinced. The trial judge adequately instructed the jury regarding the State's burden of proof, and the prosecution was simply arguing that Green's account of the events was tantamount to a fantasy. The argument does not shift the burden of proof, and we are not convinced that the comments contributed to the verdict.

II. WERE THE JURY VERDICTS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE?
¶ 9. "When the sufficiency of the evidence is challenged on appeal, this Court properly should review the Circuit Court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court." Wetz v. State, 503 So.2d 803, 807 (Miss.1987). Regarding each element of the offense, this Court must consider all of the evidence  not simply the evidence which supports the prosecution's case  in a light most favorable *845 to the verdict. Id. at 808. This Court is not at liberty to reverse unless, with respect to one or more of the elements of the charged offense, the evidence considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Christian v. State 859 So.2d 1068, 1072(¶ 12) (Miss.Ct.App.2003) (citing Wetz, 503 So.2d at 808; McClain v. State, 625 So.2d 774, 778 (Miss.1993)). Furthermore, matters regarding the weight and credibility of the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss.1984).
¶ 10. Green last challenged the sufficiency of the evidence in his motion for a judgment not withstanding the verdict or, in the alternative, for a new trial. Thus, in considering the sufficiency of the evidence, this Court must consider all the evidence presented to the trial court.

(A) Murder Charge
¶ 11. Green argues that the verdict of guilty for the charge of murder was against the weight of the evidence because Mandy's testimony and the testimony of the forensic pathologist contradict one another. Mandy testified that Green kicked Cynthia repeatedly, and that he kicked her with such force that her body rolled over. Mandy also testified that she saw Green stepping on Cynthia's neck. The State's forensic pathologist, Dr. Steven Hayne, testified that Cynthia's injuries were not consistent with having a person step on her neck. Dr. Hayne also testified that he was unaware of an instance in which a person could kick a person lying prostrate on the ground so hard that the impact of the kick would lift the body and cause it to roll over. Green argues that had the jury accepted Mandy's testimony, it would have necessarily rejected Dr. Haynes' testimony regarding Cynthia's injuries and vice versa.
¶ 12. It is well established that the jury resolves the credibility of witnesses and the weight it accords to the evidence presented. Id. Thus, the jury determined that both Mandy's account of the slaying and Dr. Hayne's forensic opinions were believable. The evidence presented to the jury is not insufficient to the extent that reasonable and fair-minded jurors could only arrive at a conclusion of not guilty. The testimony that Green left the scene of the murder clutching a bag of telephones was corroborated by testimony from his aunt, Helen, who picked him up from Cynthia's house, unaware of the severity of the altercation. Furthermore, Helen testified that she and Green were in the car for a few minutes, Green exited the car, and Helen returned to Cynthia's home a mere ten minutes before the police arrived. Demario Carter, Cynthia's boyfriend at the time, testified that he tried to call Cynthia's cell phone, only to have Mandy answer the phone and pretend to be Cynthia. Carter further testified that, as he repeatedly asked Mandy to identify herself, Green interrupted the conversation and demanded to know why Carter was still calling his girlfriend. This testimony comports with Mandy's recitation of the events while Green drove her and Brandy around Vicksburg after the slaying. Based upon this evidence and the other evidence contained in the record, we are not convinced that a reasonable jury could only have found Green not guilty of this charge.

(B) Rape and Sexual Battery
¶ 13. Green argues that there was no evidence offered regarding either the rape or the sexual battery, save for Mandy's testimony. Our case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the *846 victim is consistent with the conduct of one who has been victimized by a sex crime. McKinney v. State, 521 So.2d 898, 899 (Miss.1988); Christian v. State, 456 So.2d 729, 734 (Miss.1984); Otis v. State, 418 So.2d 65, 66 (Miss.1982) ("Although she was not corroborated as to the actual rape itself, there were other facts surrounding the incident which had corroboration. It is conceded that a person may be found guilty of rape on the uncorroborated testimony of the prosecuting witness") (citing Killingsworth v. State, 374 So.2d 221 (Miss.1979); Dubose v. State, 320 So.2d 773 (Miss.1975)); Allman v. State, 571 So.2d 244, 250 (Miss.1990); Goss v. State, 465 So.2d 1079, 1082 (Miss.1985) ("The victim's testimony alone is sufficient, although not corroborated, where it is consistent with the circumstances"). Additionally, "[t]his Court recognizes as corroborating evidence the victim's physical and mental condition after the incident, as well as the fact that she immediately reported the rape." Christian, 456 So.2d at 734; Inman v. State, 515 So.2d 1150, 1152 (Miss.1987). The fact that the rape kit did not conclusively identify Green as the source of semen retrieved from Mandy does not detract from the validity of her testimony. Furthermore, Mandy's account of the events surrounding the rape was corroborated by the testimony of number of witnesses as discussed previously. Additionally, although Mandy did not mention the rape when she dialed 911, she reported the incident to the law enforcement officials upon their arrival to Cynthia's house, giving a recorded statement to the police that night. The evidence is of such weight and quality that it is impossible to conclude that a reasonable jury could only have found Green not guilty.

(C) Kidnaping
¶ 14. Green argues that the evidence is not sufficient to support the jury verdict regarding the kidnaping. Mississippi Code Annotated Section 97-3-53 addresses kidnaping as follows:
[a]ny person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will ... shall, upon conviction, be imprisoned for life in the state penitentiary if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years....
As discussed previously, both Mandy and Carter testified that Carter called Cynthia's cellular phone, and Mandy answered the telephone pretending to be Cynthia. Both witnesses also testified that Green interrupted the conversation demanding to know why Carter was still calling Cynthia. Mandy testified that throughout the night Green repeatedly threatened her with death if she did not obey his orders. Mandy testified that Green forced her and Brandy into her car and drove them around Vicksburg. Mandy also testified that she attempted to escape; however, Green chased her, caught her, threatened to shoot her, and forced her inside Cynthia's home. Mandy's testimony was corroborated by Carter's testimony and testimony regarding the record of calls made from Cynthia's phone that night. This testimony is not lacking to the extent that reasonable and fair-minded jurors could only have found Green not guilty of this charge. The jury clearly weighed the testimony of the witnesses, and we are not convinced that the verdict is against the weight of the evidence.

*847 III. DID THE TRIAL COURT ERR IN ITS DISPOSITION OF STATE'S EXHIBIT 30?
¶ 15. In this assignment of error Green argues that "[n]o greater egregious error occurred in this case than the courts' [sic] forcing of this action to trial before all of the evidence was tested and made available to both the state and the defense." Green then argues that during the trial the State improperly utilized a washcloth that was retrieved from the bathroom at Cynthia's home. Green argues that allowing the washcloth into evidence without DNA testing resulted in a manifest injustice to the defendant. Green argues that the "manner in which the state was allowed to introduce and discuss this particular led to a verdict by the jury based on improper inferences and conjecture and cannot stand as a fair and impartial verdict." Green cites Flowers v. State, 842 So.2d 531(¶ 70) (Miss.2003), in support of this contention.
¶ 16. Green's reliance on Flowers is misplaced. The selection from Flowers on which Green relies pertains to misstatements by the State regarding facts not placed into evidence during Flower's trial. In Flowers, the supreme court determined that "[t]he cumulative effect of the State's repeated instances of arguing facts not in evidence was to deny Flowers his right to a fair trial." Flowers v. State, 842 So.2d 531, 556(¶ 74) (Miss.2003). In the case sub judice the washcloth was clearly admitted into evidence, and a careful review of the record shows us that the State did not argue facts which were not admitted into evidence.
¶ 17. This Court is procedurally barred from considering this assignment of error because Green has failed to cite any relevant authority in support of this claim. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." Simmons v. State, 805 So.2d 452, 487(¶ 90) (Miss.2001).
¶ 18. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I MURDER AND SENTENCE OF LIFE IMPRISONMENT; COUNT II SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS; COUNT III KIDNAPING AND SENTENCE OF THIRTY YEARS; AND COUNT IV RAPE AND SENTENCE OF FORTY YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES OF COUNT II AND IV TO RUN CONCURRENTLY WITH EACH OTHER AND SENTENCES I AND III TO RUN CONSECUTIVELY AND THAT UNDER MISSISSIPPI CODE ANNOTATED 47-7-3 THE APPELLANT IS NOT A FIRST OFFENDER AND COUNTS II AND IV ARE SEX CRIMES AND SHALL BE SERVED WITHOUT PAROLE OR EARLY RELEASE IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO WARREN COUNTY.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR.
NOTES
[1] Although the deceased and the defendant share a common last name and were formerly involved in a domestic relationship, the record does not reflect that the two were ever married.
[2] This Court declines to name the victims of sexual assaults. Additionally, in an effort to protect the identity of the minor child involved in this case, the child's name has been changed as well.