# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01416-COA

JIMMY T. BROWN A/K/A JIMMY BROWN                    APPELLANT

v.

STATE OF MISSISSIPPI                                APPELLEE

DATE OF JUDGMENT:            07/07/2015
TRIAL JUDGE:                 HON. GERALD W. CHATHAM SR.
COURT FROM WHICH APPEALED:   DESOTO COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     JEANINE M. CARAFELLO
                             ROSS R. BARNETT JR.
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:           JOHN W. CHAMPION
NATURE OF THE CASE:          CRIMINAL - FELONY
TRIAL COURT DISPOSITION:     CONVICTED OF COUNT I, FONDLING BY
                             A PERSON IN A POSITION OF TRUST OR
                             AUTHORITY, AND SENTENCED TO TEN
                             YEARS, WITH ALL TEN YEARS
                             SUSPENDED, AND TEN YEARS OF
                             POSTRELEASE SUPERVISION, WITH FIVE
                             OF THOSE YEARS REPORTING AND FIVE
                             NONREPORTING, AND TO PAY $1,000 IN
                             RESTITUTION TO THE MISSISSIPPI
                             CHILDREN'S TRUST FUND; AND COUNT
                             II, FONDLING, AND SENTENCED TO FIVE
                             YEARS; WITH THE SENTENCES TO RUN
                             CONSECUTIVELY, ALL IN THE CUSTODY
                             OF THE MISSISSIPPI DEPARTMENT OF
                             CORRECTIONS
DISPOSITION:                 AFFIRMED AND REMANDED - 04/25/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   BEFORE GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.

   ISHEE, J., FOR THE COURT:

¶1.    In November 2013, Jimmy T. Brown was indicted for one count of fondling his granddaughter when she was under the age of eighteen, in violation of Mississippi Code Annotated section 97-5-23(2) (Rev. 2014), and one count of fondling his granddaughter when she was under the age of sixteen, in violation of section 97-5-23(1).  Brown proceeded to trial in the DeSoto County Circuit Court, where a jury found him guilty on both counts. On Count I, Brown was sentenced to a ten-year suspended sentence, with ten years of post-release supervision, to run consecutively to the sentence for Count II.  On Count II, Brown received a sentence of five years in the custody of the Mississippi Department of Corrections (MDOC).  Brown was ordered to pay $1,000 in restitution to the Mississippi Children's Trust Fund.  He now appeals.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.    V.B.[1] is the granddaughter of Brown, and was twenty-one years of age at the time of trial.  When V.B. was approximately three years old, her parents divorced, resulting in her living with her mother and father separately at different times in her life.  She first went to live with her father in DeSoto County, Mississippi, when she was around seven years old. V.B. spent a great deal of time with her grandfather during the time she lived with her father. At trial, V.B. testified that on multiple occasions, when she was between the ages of eight and thirteen, Brown digitally penetrated her when she and Brown were alone at Brown's home.  She further testified that sometime around the age of thirteen, she moved to Oklahoma to live with her mother.  V.B. moved back to live with her father, however, when

_____

[1] Because V.B. was a minor at the time that she became a victim of sexual abuse, initials will be used to protect her anonymity.

she was sixteen years old. At that time, V.B. explained that the sexual abuse resumed, and continued to take place until the last incident occurred when she was nineteen years old.

¶3. V.B. testified that when she was either sixteen or seventeen years old, Brown penetrated her with his penis. V.B. also elaborated on other instances regarding what Brown did to her, and where the specific acts took place. While V.B. knew that the abuse took place between the ages of eight and thirteen, and again between the ages of sixteen and nineteen, she could not provide specific dates due to the recurring nature of the sexual acts. It was not until July 2013 that V.B. confided in her brother that she had been sexually abused by Brown. Her brother then informed V.B.'s mother regarding the information, which led V.B. to eventually report the abuse to the DeSoto County Sheriff's Department.

¶4. Detective Jerry Owensby of the sheriff's department began an investigation into the matter. During the course of his investigation, Owensby interviewed V.B., V.B.'s mother, and other family members. At trial, V.B.'s mother corroborated V.B.'s testimony regarding the timeline of abusive events. Her mother also explained that she worked with authorities to help further corroborate V.B.'s allegations. In doing so, V.B.'s mother placed a phone call to Brown in the presence of Owensby, and the phone call was recorded. The phone call was played in the presence of the jury, and included Brown confirming that he had made inappropriate contact with V.B. at his home while Brown's wife was at work. Though Brown initially denied having sexual intercourse with V.B., he eventually admitted that he had done so to V.B.'s mother.

¶5. Following the phone call, Brown was taken into custody by Owensby and interrogated

3

at the sheriff's department. Brown was properly read his *Miranda*[2] rights, acknowledged that he understood those rights, and waived them. Brown offered to tell Owensby whatever he needed to avoid arrest, but Owensby repeatedly told Brown to tell him the truth. Ultimately, Brown stated that V.B. had pulled her pants down, that she revealed her private parts to him, and that he touched those parts of V.B. Brown claimed V.B. was approximately seventeen or eighteen years of age at that time, and that he informed his wife afterwards. Brown additionally admitted to touching V.B.'s vagina at least four or five times total, all while being in a position of trust and authority over her. Brown, however, denied ever having sex with V.B. to Owensby.

¶6. Brown proceeded to trial, and was convicted by a jury on two counts of gratification of lust. Brown filed posttrial motions for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The circuit court denied Brown's motions. Brown now appeals. Finding no error, we affirm.

## DISCUSSION

¶7. On appeal, Brown asserts that the indictment failed to adequately notify him of the nature and cause of the accusations, rendering it defective; that the State failed to prove the essential elements of the crimes charged; that the circuit court erred in denying his motion to suppress; and that he received ineffective assistance of counsel. We disagree.

I. **The indictment provided Brown with sufficient notice of the charges against him.**

¶8. Brown asserts that his indictment was defective, as it did not contain specific dates,

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

and thus, did not sufficiently notify him of the charges against him. "The question of whether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or de novo review, by [an appellate c]ourt." *Tapper v. State*, 47 So. 3d 95, 100 (¶17) (Miss. 2010). Under Uniform Circuit and County Court Rule 7.06, "[t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." Expanding on Rule 7.06, the Mississippi Supreme Court has held that an indictment must contain: (1) the essential elements of the offense charged; (2) sufficient facts to fairly inform the defendant of the charge against which he must defend; and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense. *Berry v. State*, 996 So. 2d 782, 786 (¶8) (Miss. 2008) (quoting *Gilmer v. State*, 955 So. 2d 829, 836-37 (Miss. 2007)).

¶9. The indictment that Brown now challenges reads as follows:

> **Count I:** That JIMMY T. BROWN, Late of the County and State aforesaid, between the dates of July 1, 2009[,] and June 30, 2011, and within the jurisdiction of this Court, did willfully, unlawfully and feloniously, for the purpose of gratifying his lust or indulging his depraved licentious sexual desires, handle, touch or rub with his hands or any part of his . . . body or any member thereof, [V.B.], a child under the age of eighteen (18) years and not the spouse of []BROWN; and the said []BROWN being at the time a person above the age of eighteen (18) years and occupying a position of trust or authority over the said [V.B.], in direct violation of Section 97-5-23(2), Mississippi Code 1972 Annotated . . . .

> **Count II:** That JIMMY T. BROWN, Late of the County and State aforesaid, between the dates of July 1, 2001[,] and June 30, 2007, and within the jurisdiction of this Court, did willfully, unlawfully and feloniously, for the

5

purpose of gratifying his lust or indulging his depraved licentious sexual desires, handle, touch or rub with his hands or any part of his . . . body or any member thereof, [V.B.], a child under the age of sixteen (16) years and not the spouse of []BROWN; and the said []BROWN being at the time a person above the age of eighteen (18) years and occupying a position of trust or authority over the said [V.B.], in direct violation of Section 97-5-23, Mississippi Code 1972 Annotated . . . .

Brown alleges that the identical language and time spans set forth in each count deprived him of establishing "any defense other than denial." Brown also asserts that the charges were "indistinguishable." We find no merit to these arguments.

¶10. In each count, the State alleged that Brown, being a person over the age of eighteen and in a position of trust or authority over V.B., fondled V.B. when she was under the age of eighteen, and that Brown also did so when V.B. was under the age of sixteen. The indictment included the dates V.B. lived in Mississippi, which are the times in which Brown had access to V.B. Thus, the indictment informed Brown that he was being charged with fondling his granddaughter when she was between the ages of sixteen and seventeen, and again when she was between the ages of eight and thirteen. The State needed only to prove that Brown inappropriately fondled V.B. at least once during the time spans alleged.

¶11. Generally, an indictment tracking the language of the criminal statute is sufficient to inform the defendant of the charged crime. *Batiste v. State*, 121 So. 3d 808, 836 (¶43) (Miss. 2013). And as Brown concedes, a specific date is not required so long as the defendant is fully and fairly informed of the charges against him. *Morris v. State*, 595 So. 2d 840, 842 (Miss. 1991). Therefore, "it is important that a defendant be given the specific date or dates of the alleged acts *if at all possible*." *Wilson v. State*, 515 So. 2d 1181, 1183 (Miss. 1987)

6

(emphasis added). Failure to provide specific dates alone, however, does not render the indictment defective. *Morris*, 595 So. 2d at 842. Here, the State could not provide exact dates as V.B. herself could not recall specific dates due to the recurring nature of the abusive acts. Furthermore, specific dates of the alleged sexual abuse are not essential elements of the crime charged—rather, the victim's age is. Even so, the exact age of the victim is not required. In this regard, the indictment specified that V.B. was under the ages of eighteen and sixteen, respectively, as required by the statute. Thus, as "[t]he primary purpose of an indictment is to give a defendant fair notice of the crime charged," we find that Brown's indictment sufficiently tracks the language of sections 97-5-23(1) and 97-5-23(2), fully notifying him of the nature and cause of the charges against him. *Williams v. State*, 169 So. 3d 932, 935 (¶9) (Miss. Ct. App. 2014). This issue is without merit.

## II. The State provided sufficient evidence to prove each essential element of the crimes charged, and the verdict is not against the overwhelming weight of the evidence.

¶12. Brown asserts that the State put forth no evidence of V.B.'s age during any of the alleged acts, or even of what alleged acts took place, thus failing to prove beyond a reasonable doubt each essential element of the crimes charged. In determining whether the State presented legally sufficient evidence to support the verdict, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]'" *Larry v. State*, 200 So. 3d 453, 459 (¶15) (Miss. Ct. App. 2016) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). If, viewing the evidence in the light most

favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id*. "This Court is not at liberty to reverse unless, with respect to one or more of the elements of the charged offense, the evidence considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Miller v. State*, 982 So. 2d 995, 996 (¶4) (Miss. Ct. App. 2008) (quoting *Green v. State*, 887 So. 2d 840, 845 (¶9) (Miss. Ct. App. 2004)). "Furthermore, the jury determines the credibility of witnesses and resolves conflicts in the evidence." *Id.* (citing *Evans v. State*, 725 So. 2d 613, 680-81 (¶293) (Miss. 1997)).

¶13.    Under Mississippi Code Annotated section 97-5-23(1), the State was required to prove that: (1) Brown was over the age of eighteen; (2) V.B. was under the age of sixteen; and (3) Brown gratified his lust by touching V.B.'s body with his hands or any other part of his body. In order to prove the essential elements of section 97-5-23(2), the State was required to prove that: (1) Brown was over the age of eighteen; (2) V.B. was under the age of eighteen; (3) Brown touched V.B.'s body with his hands or another part of his body for the purposes of gratifying his lust; and (4) Brown held a position of trust or authority over V.B. at the time of the alleged offense. We find the State presented sufficient evidence regarding each essential element of the crimes charged beyond a reasonable doubt.

¶14.    V.B. testified to the actions taken by Brown, including Brown digitally penetrating her, placing his mouth on her vagina, and penetrating her with his penis. V.B. further testified to the time frames in which the repeated penetration took place, which she stated were when she was between the ages of seven and fourteen, and again when she was between

the ages of sixteen and seventeen. Moreover, the jury heard Brown's admission during his interrogation that he was in a position of authority and trust over V.B. at the time he committed the abusive actions. Thus, we find the verdict is supported by sufficient evidence presented by the State.

¶15. In addition, we find that the circuit court did not err in denying Brown's motion for a JNOV or, in the alternative, a new trial. "[This Court] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). Therefore, the Court weighs the evidence "in the light most favorable to the verdict." *Id.* If the Court disagrees with the verdict of the jury, "the proper remedy is to grant a new trial." *Id.* Brown asserts the same arguments as above to support that he is entitled to a new trial. We do not so find. The jury was presented with conflicting evidence, weighed that evidence, and reached a verdict. After reviewing the record and weighing the evidence in the light most favorable to the verdict, we cannot find that allowing the guilty verdict to stand would sanction an unconscionable injustice. This issue is without merit.

### III. The circuit court did not abuse its discretion by denying Brown's motion to suppress.

¶16. Brown's argument regarding the circuit court's denial of his motion to suppress is two-fold. First, Brown asserts that the video-recording of his interrogation with Owensby should have been excluded. Second, Brown asserts that the video should have been excluded because the interrogation stemmed from a recorded phone call between him and V.B.'s mother, which Brown alleges violated his *Miranda* rights and right to privacy. Ultimately,

9

Brown argues that he did not knowingly, intelligently, or voluntarily waive his *Miranda* rights prior to the phone call, or his interrogation. Brown, however, did not present any argument before the circuit court regarding the exclusion of the audio-recorded phone call; as such, we are not required to address the merits of that contention as it is procedurally barred. *See Webb v. State*, 113 So. 3d 592, 602 (¶35) (Miss. Ct. App. 2012) (holding that failure to specifically state grounds for excluding evidence waives the objection). For the sake of thoroughness, however, we will address both of Brown's arguments under this heading as they pertain to fundamental rights protected by the Constitution.

¶17.    "This Court will reverse a trial court's denial of a motion to suppress only if the ruling is manifest error or contrary to the overwhelming weight of evidence." *Barnes v. State*, 158 So. 3d 1127, 1134 (¶22) (Miss. 2015). "The circuit court sits as a fact[-]finder when determining voluntariness of a confession, and its determination will not be reversed unless manifestly wrong." *Walker v. State*, 197 So. 3d 914, 917 (¶9) (Miss. Ct. App. 2016) (quoting *Horne v. State*, 825 So. 2d 627, 639 (¶44) (Miss. 2002)). "Crucially, 'the resolution of conflicting testimony regarding voluntariness is a question of fact to be resolved by the trial judge at the suppression hearing.'" *Id.* (quoting *Chase v. State*, 645 So. 2d 829, 841 (Miss. 1994)). We will address the phone-call recording first, as Brown asserts its contents instigated Brown's later interrogation.

### A.    *Audio-Recorded Phone Call*

¶18.    Brown contends that he was entitled to be warned, or Mirandized, at the outset of the phone call between himself and V.B.'s mother on the grounds that V.B.'s mother was acting

pursuant to the instruction of Owensby when the call was placed. Brown further asserts that he detrimentally relied upon the belief that the phone call was of a personal nature rather than at the behest of a law-enforcement agent, and thus, his fundamental right to privacy was illegally violated. We disagree.

¶19. We find that Brown had no reasonable expectation of privacy in the phone conversation between himself and V.B.'s mother. In *Bankston v. State*, 4 So. 3d 377, 380-81 (¶14) (Miss. Ct. App. 2008), this Court stated:

> The Mississippi Supreme Court has held that "electronic surveillance, 'bugging,' does not tread upon the constitutional rights of the Fourth Amendment when the consent of one of the parties is first obtained. The expectation of privacy, though perhaps shaken by the mistaken belief that a person to whom one voluntarily confides will not reveal the conversation[,] does not reach constitutional proportions." *Everett v. State*, 248 So. 2d 439, 443 (Miss. 1971) (citing *Hoffa v. United States*, 385 U.S. 293 (1966)).

Applying this long-held principle to the present matter, the record clearly reflects that V.B.'s mother consented to the recording of her phone conversation with Brown. Brown assumed—albeit mistakenly—that V.B.'s mother would not convey the details of their conversation to law-enforcement officers. *See Everett*, 248 So. 2d at 443. Therefore, we hold that Brown did not have a reasonable expectation of privacy during his incriminating conversation with V.B.'s mother.

¶20. In addition, Brown was not entitled to be informed of his right to remain silent at the outset of the phone call. As the State properly points out, "[u]nder *Miranda*, the accused must be warned of the right to remain silent and the right to an attorney before any custodial interrogation may occur." *Clark v. State*, 40 So. 3d 531, 541 (¶22) (Miss. 2010) (citing

11

*Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). "To be subject to custodial interrogation, one must be both in custody and undergoing interrogation." *Wilson v. State*, 936 So. 2d 357, 362 (¶11) (Miss. 2006). Here, Brown was neither in custody nor being interrogated during his conversation with V.B.'s mother. Therefore, Brown's fundamental rights were not violated, and this issue is without merit.

### B.     Video-Recorded Interrogation

¶21.    Regarding the video-recording of the interrogation, Brown argues that the admissions he made through statements given during his interrogation were not freely and voluntarily given, but rather the product of extreme mental and physical duress, which took place throughout the interrogation. Brown's trial counsel further asserted that Brown merely stated what he thought Owensby wished to hear in order to release Brown, and on that basis, Brown's statements should have been excluded. The circuit court found otherwise.

¶22.    After hearing argument from both sides at the suppression hearing, and reviewing the interrogation video in its entirety, the circuit-court judge specifically found that Brown was in no form of distress during the interrogation. The circuit court further found that Brown appeared to be an intelligent man, and that Owensby neither coerced Brown nor promised him anything in exchange for his statements. Reviewing the totality of the circumstances, the circuit court found that Brown knowingly, voluntarily, and intelligently waived his *Miranda* rights before making any statements. As result, the court held that Brown's statements were freely and voluntarily given.

¶23.    Reviewing the record before this Court, we cannot hold that the circuit court abused

its discretion by admitting into evidence the phone-call recording and the interrogation video, as we find those decisions were not manifestly wrong or contrary to the overwhelming weight of evidence. Therefore, we find no merit to this issue.

### IV. Assistance of Counsel

¶24. In this issue, Brown claims he received ineffective assistance from his trial counsel because his counsel (1) did not move to suppress the telephone recording between Brown and V.B.'s mother; (2) did not object to leading questions; and (3) did not move for a change of venue for Brown's trial. We decline to address this issue on direct appeal.

¶25. Rule 22(b) of the Mississippi Rules of Appellate Procedure provides:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

And the supreme court has held:

> It is unusual for [an appellate c]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim . . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. [An appellate c]ourt will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003) (internal citations and quotations

13

omitted).

¶26. Upon review, the record does not affirmatively indicate that Brown received ineffective assistance of constitutional dimensions. Nor have both parties explicitly stipulated that the record is adequate to allow us to make findings without considering a trial judge's findings of fact. *Gordon v. State*, 977 So. 2d 420, 425 (¶9) (Miss. Ct. App. 2008). As a result, we decline to address this issue. Thus, we dismiss Brown's claims under this heading without prejudice to his ability to raise them in postconviction proceedings, if he chooses to do so.

### V. Clerical Error

¶27. Finally, we have identified an apparent clerical error in the sentencing order and find it necessary to remand for the circuit court to correct the error. At the sentencing hearing, the court pronounced Brown's sentence on Count I as "ten years in the Mississippi Department of Corrections. That ten years will be suspended. You'll be placed on ten years of post-release supervision [(PRS)]." The subsequent written order tracked the PRS sentence, but it failed to mention the (suspended) sentence of ten years' imprisonment—stating merely that Brown was to "*serve* a term of zero (0) years incarceration in [MDOC custody]." (Emphasis added). We find it apparent this omission of the actual term of the suspended sentence (ten years) was inadvertent and a clerical error. We remand for the circuit court to correct the sentencing order for Count I to include the term of imprisonment of ten years in MDOC custody, with all ten years suspended for Brown to

14

serve the enumerated term of PRS.[3]

## CONCLUSION

¶28.    Upon review of the record, we find no merit to any of the issues raised on appeal.

Therefore, we affirm the findings of the circuit court.

¶29.    **THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, FONDLING BY A PERSON IN A POSITION OF TRUST OR AUTHORITY, AND SENTENCE OF TEN YEARS, WITH ALL TEN YEARS SUSPENDED, AND TEN YEARS OF POSTRELEASE SUPERVISION, WITH FIVE OF THOSE YEARS REPORTING AND FIVE NONREPORTING, AND TO PAY $1,000 IN RESTITUTION TO THE MISSISSIPPI CHILDREN'S TRUST FUND; AND COUNT II, FONDLING, AND SENTENCE OF FIVE YEARS; WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED, AND THIS CASE IS REMANDED FOR CORRECTION OF THE SENTENCING ORDER. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.  WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

[3] "Where it clearly appears that the judgment as entered is not the sentence which the law ought to have pronounced upon the facts as established by the record, the court acts upon the presumption that the error is a clerical misprision rather than a judicial blunder[.]" *Harvey v. State*, 919 So. 2d 282, 285 (¶9) (Miss. Ct. App. 2005) (citation omitted) (citing *Brown v. Sutton*, 158 Miss. 78, 121 So. 835, 837 (1929)). "The Mississippi Supreme Court has long held that courts 'have inherent power to correct clerical errors at any time, and to make the judgment entry correspond with the judgment rendered. This power exists in criminal prosecutions as well as in civil cases.'" *Id.* at 287-88 (¶14) (quoting *Kitchens v. State*, 253 Miss. 734, 737, 179 So. 2d 13, 14 (1965)); *see also Brown v. State*, 166 So. 3d 565, 567 (¶¶7-9) (Miss. Ct. App. 2015) (affirming and remanding for correction of the trial court's sentencing order where it improperly said the sentence was to be served in MDOC custody rather than the county sheriff's custody); *accord Harvey*, 919 So. 2d at 287-88 (¶¶13-14) (finding no error when, following revocation of probation, the circuit court corrected its written sentencing order to conform to the intended sentence previously imposed from the bench at the sentencing hearing).