# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00125-COA

**BRENT RYAN A/K/A BRENT EVERETT RYAN A/K/A BRENT EVERET RYAN A/K/A BRENT E. RYAN**                          APPELLANT

**v.**

**STATE OF MISSISSIPPI**                          APPELLEE

DATE OF JUDGMENT:                12/03/2015
TRIAL JUDGE:                     HON. LEE J. HOWARD
COURT FROM WHICH APPEALED:       LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: ERIN ELIZABETH BRIGGS
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:               FORREST ALLGOOD
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 08/15/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.    Brent Ryan appeals the judgment of the Lowndes County Circuit Court, adjudicating him guilty of felony fleeing and aggravated domestic violence. His counsel submits that the verdict is against the overwhelming weight of the evidence, and that the court erred in sentencing Ryan as a habitual offender. In a supplemental pro se brief,[1] Ryan argues that he should receive a new trial because his trial counsel was ineffective, his due-process rights

---

[1] On August 19, 2016, this Court issued an order granting Ryan's request to file a pro se supplemental brief.

were violated, and prosecutorial misconduct occurred during his trial.

FACTS

¶2.     Ryan and Aelishia Horn[2] married in Onalaska, Texas, when she was nineteen and pregnant with the couple's child. Soon after their son was born, Ryan left to join the army, and Aelishia did not hear from him for many years. Years later, Ryan found her on Facebook and wanted to know about their son. Another year or two elapsed before she and Ryan spoke again and finally made arrangements for him to visit. Eventually, the couple agreed to work things out and began living together in Lowndes County, Mississippi. Horn was paying all the bills, because, at the time, Ryan was not working. Horn testified that after several months had passed, she told Ryan that "she couldn't do it anymore." The next morning, she repeated the sentiment and stated that Ryan pinned her on the couch and choked her until she was unconscious. Upon gaining consciousness, she escaped the home and ran to a neighbor's home to call for emergency assistance. Ryan was arrested the next day after a high-speed chase.

¶3.     Ryan was indicted by a grand jury on one count of felony fleeing from a law enforcement officer, in violation of Mississippi Code Annotated section 97-9-72 (Rev. 2014). He was also indicted on one count of aggravated domestic violence against Horn, in violation

_____

[2] The parties use several variations in spelling the victim's name; for clarity, we adopt the spelling from the trial-court transcript.

of Mississippi Code Annotated section 97-3-7 (Supp. 2016).[3] On the eve of trial, the court granted the State's motion to amend Ryan's indictment to charge him as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015).[4] Following the conclusion of the evidence, Ryan was found guilty of both counts. The circuit court sentenced him to five years on the felony-fleeing count and twenty years on the aggravated-domestic-violence count, with the sentences to be served consecutively in the custody of the Mississippi Department of Corrections, without the benefit of early release or parole. Aggrieved, Ryan filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The court denied his motion, and this appeal followed.

## DISCUSSION

### I.    *Weight of the Evidence*

¶4.     The Mississippi Supreme Court held in *Bush v. State* that

> when reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict.

*Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005).

---

[3] The indictment does not allege a subsection, but based on its contents, it is clear that Ryan was indicted under subsection (4)(a)(iii) of section 97-3-7.

[4] This motion had been pending for several months.

¶5.     Ryan asserts that the jury's finding—that he strangled Horn—was against the overwhelming weight of the evidence, as he argues that the State failed to prove the legal element of strangulation.  He argues that the only evidence the jury had to rely on to justify his conviction for aggravated domestic violence was Horn's testimony, photos taken at the scene, and the testimony of Deputy John Pevey.  He points out that Horn had no visible injuries or symptoms the following day, that she refused to go the hospital on the day of the incident, and that the hospital found no abnormal results from her CT scans.  He also notes that Horn was simply released from the hospital with pain relievers.  Ryan contends that the jury based its guilty verdict on weak evidence, and points to the lack of medical evidence, the lack of credible eyewitness testimony, and Horn's subsequent actions.  In his view, this proves that the jury did not have enough credible evidence to support its guilty verdict.  For those reasons, he asserts that the trial court erred in denying his motion for a new trial.

¶6.     The State responds that the jury's verdict on the charge of aggravated domestic violence was not against the overwhelming weight of the evidence presented at trial, and points out that the testimonies of Horn and Deputy Pevey, the photographs of Horn's neck, and Ryan's flight from authorities constitute ample evidence for reasonable jurors to find that Ryan committed domestic violence against Horn by strangling her.  Further, the State asserts that Ryan presented no evidence to contradict its case, and that this is not an exceptional case where the evidence preponderated heavily against the verdict, requiring a reversal.  We agree.

¶7.     At trial, the State was required to prove that Ryan strangled or attempted to strangle

his spouse. The Legislature has defined "strangle" as the following: "to restrict the flow of oxygen or blood by intentionally applying pressure on the neck, throat or chest of another person by any means or to intentionally block the nose or mouth of another person by any means." Miss. Code Ann. § 97-3-7(9)(a).

¶8. During the State's case, Horn testified concerning Ryan's assault on her. More specifically, she testified that Ryan put his hands around her throat and choked her, making it impossible for her to breathe, which caused her to lose consciousness. She further testified, "I couldn't breathe. I passed out. I kept on saying I feel the life leaving my body. I could feel me dying. I can't breathe. Please stop." Deputy Pevey testified that he observed red marks on Horn's neck on the day in question. Photographs of Horn, taken on the day the strangulation occurred, were also admitted into evidence. This evidence, coupled with Horn's testimony that Ryan had strangled her, supported the jury's verdict. The jury could reasonably infer from the testimony and the photographs adduced at trial that Ryan strangled his wife.

¶9. Finally, although the nurse practitioner that treated Horn the next day did not find any visible signs that she had been strangled, he testified that there was no test available in the emergency room that could have objectively determined if Horn had been strangled. He also stated that, in his expert opinion, it is entirely possible to have been strangled without bruising or for the bruising's visibility to subside within a day.

¶10. In *Kirk v. State*, 160 So. 3d 685, 697 (¶31) (Miss. 2015), the Mississippi Supreme

5

Court addressed a challenge to the weight of the evidence. In that case, Marvin Kirk was convicted of strangling his wife. Kirk's wife testified that her husband grabbed her by the neck, choked her, and prevented her from breathing, which ultimately caused her to lose consciousness. *Id*. at 696 (¶27). She ran to her neighbor's house, and the neighbor testified that her neck was red, as did a responding deputy. On appeal, Kirk complained that there was no medical expert testimony showing strangulation, and the victim's testimony was not enough for a conviction. *Id*. at (¶¶27-28). The *Kirk* court disagreed, finding that the evidence was sufficient and that the verdict was not against the overwhelming weight of the evidence because "[t]he jury reasonably could infer from the testimony and the photographs adduced at trial that Marvin Kirk strangled his wife." *Id*. at (¶32).

¶11. Nearly the same set of facts is present in Ryan's case. The jury heard Horn's testimony that she was strangled by her husband and the testimony of the first responding officer, who said Horn's neck was red with abrasions. They also saw pictures of Horn's neck, some of which showed redness and an abrasion. Other than his assertion that Horn was lying and was only looking for drugs, Ryan presented no evidence to cast doubt on Horn's story. Therefore, this issue is without merit.

## II. Habitual-Offender Status

¶12. Ryan asserts that the State did not present competent evidence of the three convictions it relied on to prove that he was a habitual offender[5] within the meaning of section 99-19-81.

---

[5] Ryan does not dispute his prior domestic-abuse conviction.

During the trial, Ryan objected to the court's use of the uttering-of-a-forgery convictions in Case Number CF-2002-202, because an incorrect date of birth and social security number were listed. In attempting to verify the identify of the defendant in that case, Eric Granderson, deputy sheriff with the Lowndes County Sheriff's Department, printed a web page from the Oklahoma Department of Corrections' website.

¶13. On the website, Deputy Granderson identified a page with Ryan's photo and a list of his prior convictions, including the convictions in Case Number CF-2002-202. Ryan contends that Deputy Granderson made no attempts to get this record certified by the Oklahoma Department of Corrections and that Deputy Granderson could not vouch for the authenticity or accuracy of the information. The trial court acknowledged that the internet search was not certified, but took notice that the document stated that it was an official record from the Oklahoma Department of Corrections and ruled that the State had proved beyond a reasonable doubt that Ryan was the same defendant that had been convicted of all three prior charges.

¶14. The State argues that Ryan was properly sentenced as a habitual offender. "In order to sentence a defendant as a habitual offender, the accused must be properly indicted as a habitual offender, the prosecution must prove the prior offenses by competent evidence, and the defendant must be given a reasonable opportunity to challenge the prosecutor's proof." *Hull v. State*, 174 So. 3d 887, 900 (¶43) (Miss. Ct. App. 2015). The State contends that Ryan was properly indicted as a habitual offender by amendment of the indictment. The court

7

ruled that the evidence the State used—Oklahoma Department of Corrections website data and Ryan's pre-sentencing report—was competent to sentence him as a habitual offender. Although the social security number and birth dates differed, there was a photo and conviction data on the website, and Ryan admitted to the offenses in his pre-sentencing report. He was given an opportunity to challenge the State's proof through cross-examination at his sentencing hearing. Ryan's counsel was also given additional time after the trial concluded, the week of November 16, 2015, to investigate his claim that the charges were inapplicable, before a second hearing was conducted on December 3, 2015. "As long as the trial judge applied the correct legal standards, this Court will not reverse [his] decision unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence." *Frazier v. State*, 907 So. 2d 985, 990 (¶8) (Miss. Ct. App. 2005). We find that the State proved Ryan's habitual status beyond a reasonable doubt.

### III.    *Ineffective Assistance of Counsel*

¶15.    In his pro se brief, Ryan argues that he received ineffective assistance of counsel because his attorney failed to: object to a defective indictment, object to missing elements of the crime, pursue motions that Ryan had filed, and object to hearsay evidence.[6]

### A.    *Defective Indictment*

¶16.    Ryan alleges that his indictment was defective in four aspects and that his counsel failed to object to the "fatally defective" indictment. As to the indictment's alleged defects,

---

[6] For clarity, these issues have been condensed in our discussion of them.

Ryan asserts: (1) the indictment did not list the judicial district pursuant to Rule 7.06(4) of the Uniform Rules of Circuit and County Court,[7] (2) count II did not list the code subsection and was therefore ambiguous as to the charge and failed to constitutionally inform him of the nature and cause of the accusation against him, and (3) the indictment failed to charge an essential element of the crime of aggravated assault, "serious bodily injury." Lastly, Ryan contends that the indictment misidentified the alleged victim, his wife, and the court erred in allowing the indictment to be amended to change his wife's name from "Aelishia Ryan" to Aelishia Horn a/k/a Aelishia Ryan, because substantive amendments to an indictment must be made by a grand jury.

¶17.    In response to Ryan's first allegation of error, the State correctly notes that Lowndes County only has one judicial district. "In such counties with one judicial district, the supreme court has held that the indictment is not required to contain the judicial district." *Morgan v. State*, 966 So. 2d 204, 207 (¶17) (Miss. Ct. App. 2007).  His second complaint states that count II did not list the code subsection of Mississippi Code Annotated section 97-3-7.  The State notes that his indictment contained a header that informed him that he had been indicted for one count of "fleeing a law enforcement officer" (§ 97-9-72) and one count of "domestic violence - aggravated assault" (§ 97-3-7).  The domestic-violence count reads, in part: Ryan

---

[7] We note that the Uniform Rules of Circuit and County Court are no longer in effect, and its provisions relating to criminal practice were supplanted by the Mississippi Rules of Criminal Procedure.  But because the former rules were in effect at the time of Ryan's offense, Rule 7.06 applies to his case.  The same goes for other Rules of Circuit and County Court cited in this opinion.

9

did "unlawfully, feloniously, purposely, and knowingly, strangle Aelishia Ryan, a person, his spouse[.]" This language tracks section 97-3-7(4)(a)(iii), which reads, in part: "When the offense is committed against a current or former spouse of the defendant . . . a person is guilty of aggravated domestic violence who . . . strangles, or attempts to strangle another." Miss. Code Ann. § 97-3-7(4)(a)(iii). "As a general rule, where an indictment tracks the language of a criminal statute it is sufficient to inform the accused of the charge against him." *Stevens v. State*, 808 So. 2d 908, 918 (¶31) (Miss. 2002). The indictment clearly states the charge and gives sufficient descriptive facts to put Ryan on notice of the accusations against him. Ryan provided no evidence that the indictment hampered his defense in any way.

¶18. Third, the State asserts that the court did not err in allowing the indictment to be amended to change Ryan's wife's name from Aelishia Ryan to Aelishia Horn a/k/a as Aelishia Ryan. At trial, there was no objection to this amendment, and Ryan conceded that he and Horn were, in fact, married. The trial judge even made a special notation on his order stating, "The defendant has no objection to this amendment." Again, Ryan alleges no prejudice to his case derived from this amendment. "All indictments may be amended as to form but not as to the substance of the offense charged . . . . Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09. "Furthermore, an amendment is lawful if it is does not 1) materially alter the essential facts of the offense or 2) materially alter a defense that the

10

defendant had under the original indictment so as to prejudice his case." *Harris v. State*, 757 So. 2d 195, 199 (¶16) (Miss. 2000).

¶19. Lastly, the State correctly points out that "serious bodily injury" is not an element of the crime of aggravated domestic violence brought under section 97-3-7(4)(a)(iii). We agree with the State's responses, and see no need to comment further. This issue is without merit.

### B. Pro Se Motions and Hearsay

¶20. Ryan also complains that his counsel failed to object to hearsay evidence and that his attorney was ineffective for failing to pursue Ryan's numerous pro se motions: motion to reveal the deal, motion for FBI and NCIC reports, motion to dismiss, motion for supplemental discovery and disclosure, motion to prevent snitch testimony, motion to suppress statements, and motion to dismiss for violation of the right to a speedy trial. "A movant has the duty to pursue his motion through to hearing and decision. URCCC 2.04. Pre-trial motions not ruled upon by the time of trial are deemed abandoned." *Roy v. State*, 878 So. 2d 84, 89 (¶23) (Miss. Ct. App. 2003).

¶21. Ryan's counsel was appointed on November 10, 2014. Ryan alleges that he attempted to submit the motions pro se, but he was notified by the clerk that the deadline to submit motions had passed. He further alleges that he told his counsel about all of the motions he wanted to submit, but at that point it was past the deadline for submission, and his attorney never notified him of such date. Undeterred, Ryan submitted his motions to the court and wrote a letter to the judge asking for their consideration. The record does not show that these

motions were ever ruled on. It is unclear whether Ryan's counsel was aware that Ryan had filed the motions, although Ryan said he informed his counsel.

¶22.    The State responds that there is no requirement that retained counsel pursue a defendant's pro se motions. The State cites *Paty v. State*, 162 So. 3d 850, 855 (¶23) (Miss. Ct. App. 2014), for the proposition that the duty to pursue pro se motions is on the defendant, not his attorney or the trial court. We agree.

¶23.    With respect to hearsay, Ryan argues that the State made multiple prejudicial, inflammatory remarks during closing arguments that misstated the evidence. "As a general rule, prosecutors are to be given wide latitude in making their closing arguments." *Green v. State*, 887 So. 2d 840, 844 (¶6) (Miss. Ct. App. 2004). However,

> [n]otwithstanding the wide latitude afforded attorneys in closing arguments, [t]he standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.

*Id*. Ryan argues that the officer that identified him was never called to testify, and the only evidence offered that he was in fact driving in the area was offered by hearsay testimony of third parties. The State responds that every officer who testified identified Ryan as the driver of the truck that they were chasing. Ryan counters that the prosecutor stated, during his closing, that two vehicles were run off the road, but that was never testified to by the officers. However, the record is clear:

COUNSEL:                              . . . How many cars were run off the road
                                            during this chase?

DEPUTY JASON HUMBERS:    Two.

COUNSEL:                            Two vehicles were run off the road?

DEPUTY JASON HUMBERS:    Yes.

Thus, we find no merit to this issue.

    *IV.    Due-Process Violations*

¶24.    Ryan alleges that his due-process rights under the Eight and Fourteenth Amendments to the United States Constitution were violated prior to and during trial. He asserts that he was not given an initial appearance within forty-eight hours of his arrest and that he was not given a preliminary hearing after he requested one. Finally, he asserts that the court allowed incompetent evidence regarding his habitual-offender status to be admitted into evidence.

¶25.    The State replies that neither the record nor Ryan's brief contains any evidence to support his argument that his initial appearance was untimely or unreasonably delayed. He also fails to provide any evidence supporting his argument that he never had a preliminary hearing after he requested one. As discussed previously, the State notes that the court ruled that his habitual-offender status had been proven beyond a reasonable doubt. This issue is without merit.

    *V.    Prosecutorial Misconduct*

¶26.    Ryan contends that his wife was a confidential informant for the Golden Triangle Drug Task Force, and had had multiple contacts with the police. He submits that a simple NCIC check or report, as he requested by motion before trial, would have shown her bias and

13

the State's failure to turn over impeachment evidence that would be considered *Brady*[8] material. Ryan does not explain how a NCIC check would reveal his wife's bias and we cannot discern any. Ryan also fails to identify any material or evidence constituting *Brady* material that the State failed to turn over to him. As such, we have no basis for further discussion of the issue.

¶27. The State argues that whether the victim in a domestic-aggravated-assault case is a confidential informant is irrelevant and that Ryan has provided no evidence of these assertions regarding Horn. Further, the State points out that the prosecution is under no legal duty to inform the jury about a victim's unrelated history with police. We agree. This issue is without merit.

¶28. In summary, we find no merit to any of Ryan's arguments and no prejudicial errors committed by the circuit court. Accordingly, we affirm Ryan's convictions of felony-fleeing and aggravated domestic violence and consecutive sentences, as a habitual offender, of five and twenty years, respectively, to be served in the custody of the Mississippi Department of Corrections, without the benefit of early release or parole.

¶29. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

---

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).